

**JUDGE DAVID GUADERRAMA**

FILED

2019 JUL 22  PM 12: 45

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
DEPUTY

Hadi Abdul Haqq U.S. Veteran

## JOINT FORCE HEADQUARTERS
U.S. Army, U.S. Navy, And U.S. Air Force
### DISTRICT OF COLUMBIA NATIONAL GUARD

IN THE

UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF TEXAS - EL PASO

TEXAS DIVISION

HADI ABDUL HAQQ, U.S. VETERAN

306 E. PAISANO DRIVE, PMB #215

EL PASO, TEXAS 79901

      Plaintiff,

**EP19CV0200**

vs.                    Civil Action No. _____

WALMART DEPARTMENT STORE

7101 GATEWAY BLVD. WEST

EL PASO, TEXAS 79925

AND

McDONALD'S RESTAURANT -

WALMART DEPARTMENT STORE

7101 GATEWAY BLVD - WEST

EL PASO, TEXAS 79925

AND

WALMART STORES, INC.

702 S. W. 8th Street,

BENTONVILLE, ARKANSAS 72716.

Defendants.

## JURISDICTION

This is a civil action authorized by the First (1st), Fifth (5th), Eighth (8th), Ninth (9th), and Fourteenth (14th) Amendments to the United States Constitution. Jurisdiction of this Civil Action extends to the Civil Rights Act of 1964. Federal statutes prohibit discrimination on basis of sex, age, race, nationality, religion, or being handicapped; See e.g. Title VII of 1964 Civil Rights Act. See Report (Judiciary Committee) No. 873, Feb-10-1964 [To accompany S. 1732] House Report (Judiciary Committee) No. 914, Nov. 20, 1963 [To accompany H.R. 7152] Cong. Record Volume 110 (1964).

The purpose of S. 1732 is to achieve a peaceful and voluntary settlement of the persistent problem of racial and religion discrimination or segregation by establishments doing buisness with the general public, and by labor

unions and professional, buisness and trade association. Petitioner states that this Civil Action is secured by the First (1st) Amendment to the United States Constitution; We hold that;

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech, or of the press, or the right of the people to peaceably to assemble, and to petition the Government for a redress of grievences.

See Yee, D. Hawaii 1986, 643 F. Supp. 593, affirmed 838 F. 2d 1116, National guardsman who was involved in accident while returning to his office from recruiting trip was employee of United States for the purpose of Federal Tort Claim. Petitioner is a veteran of the District of Columbia National Guard, in the present matter before this court. Federal law not state law governed determination of position of whether member of National Guard was federal employee within Federal Tort Claims Act; see Blackwell vs. U.S.C.A. 5 (La.) 1963, 321 F. 2d 96.

Jurisdiction of this lawsuit by the veteran, petitioner, go's on to 10 U.S.C.A. §§ 801 et seq. In addition, the Court of Military Appeals was established to review certain cases from all the Armed Forces. The latter court consists of three civilian judges. Automatic review before the Court is provided for all cases in which the sentence, as affirmed of by a Court of Military Review, effects a general or flag officer or extends to death. In addition, the Judge Advocate General of each service may

petition the Court for veiw.

See State ex rel. Com'ns of Land Office vs. Board of Com'ns of Nowata County, 166 Okl. 78.25 P 2d 1074, 1077; Co-equal is to be or become equal to. To have the same quantity, the same value, the same degree or rank, or the like with. Codification is the process of collecting and arranging syste- matically, usually by subject, the laws of a state or country, or the rules and regulations covering a particular area or subject of law or practice; e.g: United States Code; Code of Military Justice; Code of Federal Regulations; and the California Code of Evidence. The end product may be called a code, revised code or revised statutes.

## COMPLAINT

Petitioner, the veteran states that the defendants in the above captioned matter is and was violating his rights as cited under the First (1st), Fifth (5th), Eighth (8th), Nineth (9th), and Fourteenth Amendments to the United States Con- stitution; And that they, all three (3) defendants, is and was treating petitioner cruel and unusual. After they issued the veteran a Walmart Debit Shopping Card, that they willfully, knowingly, and deliberty conspired to expel him from the property permanently, unlawfully, and wrongfully based on the petitioner's disabilities, race, and uncomfortable social circumstances, homeless-outside, And that the defendants kept the petitioner in immediate fear of his health, safety and welfare.

Defendants has committed Conspiracy to Commit Fraud, Conspiracy to Commit Bribery, Robbery By Trick, Conspiracy to Commit Extortion, Threatening Conduct, Obstruction of Justice, and Conspiracy to Defraud A United States Veteran, and various Negligence.

The veteran is stating   that on March 31, 2019 at Walmart Department store, located 7101 Gateway Blvd. West, while he was grocery shopping, that the altercation which led city police to expel petitioner at Walmart's request, was actually created by the Walmart staff, intentionally. A person who action on behalf of a principal is unlawful but does not merit prosecution because the agent had no Knowledge of the principal's illegal purpose, a person who lacks the mens rea for an offense but who tricked or coerced by into committing a crime. Although the agent's conduct was unlawful, the agent might not be prosecuted if the agent had no Knowledge of the principal's illegal purpose. The principal is legally accountable for the innocent agent's action. See Model Penal Code §§ 2.06 (2)(a). [cases: Criminal Law - Key 59(4).]

Petitioner, the veteran is stating   that on August 21, 2017, at McDonald's Restaurant, located inside Walmart Department store at 7101 Gateway Blvd. West, while awaiting food that he had already paid for, that the altercation which led city police to expel petitioner at McDonald's request, was actually created by McDonald's staff, intentionally. A person who action on behalf of a principal is unlawful but does not merit prosecution

because the agent had no knowledge of the principal's illegal purpose; a person who lacks the mens rea for an offense but who tricked or coerced by into committing a crime. Although the agent's conduct was unlawful, the agent might not be prosecuted if the agent had no knowledge of the principal's illegal purpose. The principal is legally accountable for the innocent agent's action. See Model Penal Code §§ 2.06 (2)(a). [cases - Criminal Law-Key 59 (4).]

Federal statutes prohibit discrimination on basis of sex, age, race, nationality, religion, or being handicapped; See e.g. Title VII of 1964 Civil Rights Act. The veteran was a customer at both places, Walmart Department Store as well as McDonald's Restaurant named in this law-suit. A customer is one who regularly or repeatedly makes purchases of, or has buisness dealing with, a trademan. or buisness; See Aiken Mills vs. United States, D.C.S.C., 53 F. Supp. 524 : Arkwright Corporation vs. United States, D.C. Mass., 53 F. Supp. 357, 361.

Petitioner, the veteran is stating   that he made more than ten (10) Oral Administrative Appeals, and that Walmart Stores Inc. located 702 S.W. 8th Street, Bentonville, Arkansas failed to respond. They were and is, responsible for the overall corrections of each Walmart Department Store. They was and is to see to it that each Walmart Department Store is operating lawfully

and in an orderly manner.

A Corporation is an artificial person or legal entity created by or under the authority of the laws of a state. An association of persons created by statute as a legal. The law treats the corporation itself as a person which can sue and be sued. The corporation is distinct from individuals who comprise it (shareholders). The corporation survives the death of its investors, as the shares can usually be transferred. Such entity subsists as a body politic under a special denomination, which is regarded in law as having a personality and existence distinct from that of its several members, and which is, by the same authority, vested with the capacity of continuous succession, irrespective of changes in its membership, either in perpetuity or for a limited term of years, and of acting as a unit or single individual in matters relating to the common purpose of the association, within the scope of the powers and authorities conferred upon such bodies by law; See Dartmouth College vs. Woodward, 17 U.S. (4 Wheat.), 518, 636, 657, 4 L.Ed. 629; U.S. vs. Trinidad Coal Co., 137 U.S. 160, 11 S. Ct. 57, 34 L.Ed. 640.

A court reviews pro se pleadings under a less stringent standard than those drafted by attorneys, and such pleadings are entitled to liberal construction that includes all reasonable inferences that can be drawn from them. See Haines vs. Kerner,

404 U.W. 519, 520-21 (1972) (explaining the lower standard for pro se pleadings). At the same time, however, parties proceeding pro se are still required to provide sufficient facts in support of their claims; United States vs. Pineda, 988 F.2d 22, 23 (5th Cir. 1993).

Insofar as defendant McDonald's Restaurant named in this petition, the veteran has attached hereto, an Administrative Appeal dated August 28, #017, addressed to Robert Castro, who is or was President of Castro Enterprises, Inc. by which the defendant McDonald's Restaurant operated. The Administrative Appeal was sent to four (4) locations as shown on the front page of the Administrative Appeal attached hereto; And to this date, they failed to respond. Footnote: Attorney Jorge Rivas withdrew from McDonald's case.

Insofar as defendant Walmart Department Store, petitioner, the veteran made more than ten (10) Oral Administrative Appeals. These Oral Administrative Appeals by the petitioner was made to Ms. Saundra, who is or was a Customer Service Manager at the Walmart Department Store; Also petitioner made an Oral Administrative Appeal to Ms. Jacqualine on at least three (3) different occassions, who is or was a Customer Service Manager; The veteran made an Oral Administrative Appeal to Mr. Edgar on at least three (3) different occassions, who is or was an Assistant Manager for the Walmart Department Store;

Petitioner made an Oral Administrative Appeal to Mr. Raynard, who is or was an Assistant Manager for Walmart Department store. The veteran made an Oral Administrative Appeal to Mr. Mike, who is or was a CO-Manager for the Walmart Department store. The veteran made an Oral Administrative Appeal to Ms. Audrey, who is or was a Customer Service Representative at the Walmart Department store. All to no avail.

    28 U.S.C. Code 1915 (e)(1) authorizes this court to request attorney to represent any person unable to afford counsel. Petitioner, the veteran respectfully request the representation of counsel in this entire law-suit.

**Footnote** - This court should note that almost immediately after the August 21, 2017 altercation at McDonald's Restaurant named in this petition, the veteran signed written retainer with Attorney Jorge Rivas who agreed to represent the veteran. But then, over a period of about three (3) months, Rivas met the veteran at El Paso County Courthouse on at least five (5) occassions stating that he was unable to contact McDonald's Personel for interveiw, and for that reason he wished to withdraw the retainer; saying that "he did not know what eles to do".

Petitioner then agreed with the attorney and accepted his Oral Withdraw. He wished the veteran Good Luck in that matter.

Petitioner last employment was in the year 1991 as a Security Guard for C-Brac Security Company in Washington, D.C. Petitioner worked about 90 days, and the employment terminated, In January of the year 2016, petitioner start shopping at the Walmart Department Store named herein, mainly for lunch and dinner foods. He noticed defendant Walmart Store have a Deli Department which serves hot foods such as fish, chicken, potatoes, shrimp, and a few other hot dishes.

Walmart made available to employees in the Deli Department, special utensils, Gloves, and Hand-Paper, designed to pick up the foods without touching foods with their hands and without touching the foods with their naked-gloved-hands. Once gloves are put on, they were instructed to either pick the foods up with utensils or either pick the foods up with Hand-Papers.

We noticed the employees in the Deli Department wearing the thin plastic gloves, opening doors with the gloves on, turning on and off cooking machines with the gloves on, weighing foods on the scale with the gloves on, resting their hands on the counter-top with

their gloves on, wiping their irritated hands on their dirty apron with their gloves on, scratching an itch on their body with their gloves on, sneezing and coughing with their gloves on, touching their hair with their gloves on, adjusting their eye-glasses with the gloves on, fan away insects using their hands with their gloves on, then Keep picking-up the veterans fish or chicken, without using special Utensils and without using the Hand-Papers, with gloves on.

Petitioner asked the Deli Employees respectfully during the past three (3) years not to touch his foods with their naked hands in gloves. Most of the time they agreed, but didn't stop. Petitioner went to the Customer Service Center and requested representatives to not allow the Deli Employees to handle his foods with their naked-hands in gloves. Customer Service Representatives agreed with the veteran on several occassions during the first year, but the Deli Employees still never stopped; Petitioner remained in immediat fear of his health, safety, welfare.

After one year had passed by, Petitioner made an Oral Appeal to Ms. Saundra who is or was the Customer Service Manager at the Walmart Department Store. He advised Ms. Saundra that the Walmart Employee in the Deli Department will not use the food utensils or Hand-Papers to pick up the veterans meat, and that such employee being a female, also do not speak english. Ms. Saundra, the Customer Service Manager agreed to correct her, but petitioner recognized no signi-ficant changes in the Deli Department.

Petitioner made an Oral Administrative Appeal to Ms. Jacqueline, who is or was a Customer Service Manager at the Walmart Department Store. Advising her that a man-name Rodriguez working in the Deli Department refuse to use food utensils and/or Hand-Paper, but rather, is picking up the veterans cooked fish and cooked chicken with his naked-hands in gloves. The Customer Service Manager - Ms. Jacqueline instructed Rodriguez to use food utensils or Hand-Paper and give petitioner clean food. Rodriguez used food utensils, but gave me the same fish and chicken he had recently played over.

Footnote: The court should note that all foods requested from the
         Deli at Walmart Store in this section of the petition are
         cooked foods, meat.

Petitioner made an Oral Appeal to Mr. Edgar, who is or was an Assistant Manager at the Walmart Department Store. He advised the Assistant Store Manager that the Deli Employees where looking around awaiting the veteran to approach that counter for order, than deliberately wipe their hands on the dirty apron, put their hands on the counter-top and will not use food utensils or Hand-Papers. Petitioner told Mr. Edgar, the Assistant Store Manager that the Deli Employees was searching for the veteran's response. Mr. Edgar, the Assistant Manager said that after I left, that he would speak with the employee privately and notify his supervisor.

Petitioner made an (Oral) Appeal to Mr. Raynard, who is or was an Assistant Manager for Walmart Department store. The veteran explained to Mr. Raynard that the employee in the Deli Unit is handling his food without using food utensils or Hand-Papers; that once the veteran request that they do so, still they gave him the same peice of cooked meat that they had previously played over.

Petitioner, the veteran went to Walmart Department store named in this petition early March 2019 grocery shopping, having been treated cruel and unusual at the Deli Department, but there, while at the Check-Out-Register, the sales clerk quickly charged the veteran for his Order. When the veteran looked over his sales receipt, she noticed that although he had only ordered one (1) single bread-role, the sales clerk had charged him for thirteen (13). Petitioner took his receipt along with the groceries to Ms. Audrey, who is or was a Customer Service Representative at the Walmart store. Ms. Audrey went to the sales clerk and asked if petitioner had order one (1) bread-roll or thirteen (13) bread-rolls. The sales clerk said only one (1), and the Customer Service Representative gave petitioner back the difference for the extra twelve rolls, with the assistance of Ms. Jacqualine who is or was a Customer Service Manager.

March 31, 2019, petitioner went to Walmart Department store named in this petition for lunch and dinner foods - His last

stop in the store was the Deli Department. The two (2) employees on duty in that department was Rodriguez and a female previously complained of to Assistant Manager Edgar. The veteran asked Mr. Rodriguez for one (1) peice of cooked fish. He asked Rodriguez not to pick-up the fish with his naked-hands in gloves; but Rodriguez refused, and petitioner raised a small plastic Walmart-Bag containing a pack of hotdogs and grapes, then threw it over the service counter in Rodriguez direction. Rodriguez snapped, by raising the bag with the fish in it over his head in a angrey position with his arm cocked back, so as to throw it in the veteran's face for the purpose of causing injury to petitioner; But he did not release the weapon.

The veteran went and told Ms. Jacqueline who is or was a Customer Service Manager at the Walmart Store what had just happened between petitioner and Mr. Rodriguez at the Deli Department. Ms. Jacqueline said that the next time something like this occure, petitioner would not be allowed in the store again, but said that she had just sent for a store Manager. She spoke to Mr. Rodriguez in the language "Spanish".

Mr. Mike who is or was CO-Manager for the Walmart Department Store immediately arrived at the Deli location. The veteran explained to Mr. Mike what had just happened at the Deli Unit between petitioner and Mr. Rodriguez. The CO-Manager told the veteran that the

incident was over, but if it ever happen again, that petitioner would not be allowed back into the store; The veteran agreed and he and Mr. Mike - the CO-Manager shook hands.

Petitioner was given back his small plastic Walmart Bag with hotdogs and grapes inside; petitioner was also given the bag with the fish Rodriguez threatened to hit him with. After the veteran passed through the check-out register and paid for the hot-dogs, grapes, and fish, he was immediately approached by Mike - The CO-Manager, A female Assistant store Manager in her late 30's or early 40's Mexican/American 6 feet and slim built, along with a security Agent in his late 20's or early 30's White skin looking.

The CO-Manager said "Mr. Hagg you can not come back into the store anymore". The veteran stated, "But you said that I could". The CO-Manager said "After I finished talking with you, then spoke with Rodriguez, Rodriguez said that he was thinking about calling the police". The CO-Manager, female Assistant Manager, and the White skin looking security Agent said to the veteran "If You Sign This Form The Security Agent is Holding, Then We Will Not Call The Police. The Form States That You Agree Not To Go Back Into Any Walmart Stores In The United States." Petitioner told the CO-Manager No, he do not agree, petitioner told the Assistant Store Manager the female NO, he do not agree, and petitioner told the White skin looking Walmart Security Agent No, he do not agree.

The three (3) of them, Mike the co-Manager, the female Assistant store Manager, and the Security Agent said we are now going to call police. The veteran said he would agree not to come back into that particular Walmart store until he call a lawyer; they said no, and called 911.

While awaiting police, the veteran told MR. Mike - co-Manager for the Walmart store that he had made Oral Administrative Appeals to Manager Edgar, Manager Saundra, Manager Raynard and other staff members. Petitioner told the co-Manager that he requested the store Manager on several occassions but that the employees kept saying the store Manager was too busy.

Once police arrived, the co-Manager told police - officer Holmes that petitioner had been very respectfully and cooperative. Petitioner explained to both police - officers in detail what had happened in the store, and told officer Holmes that the veteran had just said to the co-Manager that he would not come back into the Walmart store at bar; but the veteran went on to tell officer Holmes that the three (3) Walmart Managers tried to get him sign a form agreeing not to come into any Walmart stores in the United States.

Officer Holmes partner, as unknown policeman, asked the veteran, " If You Know They Don't Want You Coming Into The store, Why Would You Keep Coming Back ?"

Petitioner answered " Since I set in front of El Paso County
Courthouse Each Morning Begging For Money-Change,
the Number 59 Bus comes directly across the street
at the Electric Company and runs completely to Walmart
Store at the Eastside Bus Terminal."

Officer Holmes then told his partner that the veteran was coming
because it was a convenient way to shop. Officer Holmes then
gave petitioner a case number for the Police Report and said
that if the veteran returned back to "said" Walmart Store without
written approval, then petitioner will be arrested for criminal
trespassing.

The unknown Store Manager for the Walmart Department
Store was responsible for the leadership and organization of all
managers operating under his supervision. He was to see to it that
each Oral Administrative Appeal made by petitioner was totally
and completely resolved.

The unknown General Manager for the Walmart Department
Store located 7101 Gateway Blvd. West, he or she is and was
responsible for the overall corrections at the Walmart Department
Store. He or she, was to see to it that the Department Store operated
in a safe and lawful manner for each and every customer, including
the petitioner.

Gomez Jesus is a deputy sheriff for the county of El Paso. While on duty at the El Paso County Courthouse, the deputy asked petitioner what was wrong with his leg and why was he limping. Petitioner told the deputy that unknown agents is laising his foods with food poisoning and that other agents are enhancing such disabilities with unsanitery services.

Ms. Jessica and Ms. Debra, along with Mr. Ralph (Ret.) is or was Security Guards at the El Paso County Courthouse. Each of them on seperate occassions asked the veteran what was wrong with his leg and/or why was he limping. Petitioner explained to them that once he shop at food stores, the cashier person print's out two receipts; they give petitioner one and they keep the other receipt under the money drawer of the register. Then later, give's that second receipt to unknown agents so that they will know the veterans daily meals at the store. Then are employees who are addicted to alcohol and/or illicit drugs to help contaminate the veterans foods, beverages, and even medicines.

The Walmart Store Employees working at the Deli as mentioned in this petition, all of them for the most part appears to be illicit drug addicts and/or alcoholics. Ms. Nora is or was a case-manager at the shelter for the homeless, called Opportunity Center in downtown area of El Paso, Texas.

While during a daily shopping at the Walmart Store named herein, the veteran noticed Ms. Nora as she noticed the veteran shopping. Ms. Nora asked the veteran "Why Are You Shopping At This Particular Walmart Store Today?" Petitioner answered "Because I am homeless-outside and carrying my belongings on this Hand-Cart, this Walmart is the closest to downtown area by the 59 Bus Route. The 59 Bus Route is an Express Way on the freeway, 15 minutes to Walmart at the Eastside Bus Terminal." The case-manager agreed.

See attached El Paso Police Incident/Investigation Report, Number OCA 19-090092. This police-report shows that officer A. Holmes, working as patrol unit was dispatched to Walmart in reference to an assault in progress. Before petitioner was given a trespass warning, he tried to explain to officer Holmes that the veteran was in immediate fear of his health, safety and welfare, but the police officer interrupted petitioner by saying,

"No, all I want to Know is what happened here today". Petitioner was not trespassing. The veteran has a valid Walmart Debit/Credit Identification Customer Service Card.

In the matter of Part Two of this Complaint, Petitioner, the veteran traveled from El Paso County Courthouse to McDonald's Restaurant inside Walmart store, using Bus Number 59, thinking he was avoiding possible food contamination by unsanitary restaurant employees where he usually stay; El Paso Downtown

Area. But After eating at the McDonald's named in this petition for a period of about one (1) year, the veteran noticed that the employees serving the foods was unsanitary, and petitioner remained in immediate fear of his health, safety, and welfare at said McDonald's Restaurant.

Footnote: The court should note that when officer Holmes asked his partner to privately interview the employee Rodriguez who was working in the Deli Department at Walmart Store previously mentioned herein; After the interview, officer Holmes partner returned saying that he found no evidence of the small plastic bag containing hotdogs and grapes used by the veteran, thrown across the service counter in Rodriguez direction, even ever touched Rodriguez, but landed only on the floor beside him. The Officer said no assault charges.

Walmart Store Surveillance Cameras will show on that date and time of the incident, Rodriguez came from one work station to another where the veteran awaiting service, then he reached to a small rack above the sink, he got a new pair of plastic gloves from the rack above the sink, he took the old plastic gloves off and trashed them, he rolled the new plastic gloves around in his naked bare hands, he then put the used gloves on, but never even

washed his hands at the sink that was directly before him, then picked up petitioner's fish with his naked hands in the gloves that he rolled around in his bare hands before putting them on, and refused to use the utensils and/or hand-papers; And petitioner, the veteran was in immediate fear of his health, safety and welfare.

Petitioner went to the service Counter at McDonald's Restaurant and asked the young female employee not to allow the lady working on the dinning-room floor to bring his food-order, as the restaurant practices had changed into all Eat-In Customers must have their food-order delivered to the table where seated. Petitioner stated to the female McDonald's Restaurant Employee at the service Counter that the lady working the dinning-room floor as the janitor is mopping the floor, emptying trash cans, cleaning tables, cleaning soda machines, cleaning ice-machines, then grabbing petitioner's tray of food without washing her hands. The young female employee operating behind the service Counter agreed.

Two days later the young females working behind the service Counter at McDonald's gave the janitor petitioner's food-order again. The veteran returned back to the service Counter at McDonald's and explained again why he did not want the janitor to serve him his order. The employee agreed, but McDonald's Restaurant Managers repeated the process a few more times.

The veteran returned to the Service Counter and noticed an Assistant Manager, Ivonne Guadalupe Silva. He explained to Assistant Manager Guadalupe that employee at the Service counter, most days petitioner eat at said McDonald's Restaurant, they give the janitor, petitioner's food-order to bring him after the female janitors had been mopping floors, emptying trash cans, cleaning tables, and cleaning soda machines and ice-machines, and without washing their hands. The Assistant Manager agreed, but the workers never changed their practices.

The veteran returned back to the Service Counter at McDonald's Restaurant and attempted to tell the Assistant Manager-Ivonne Guadalupe Silva again, but this time the Assistant Manager ignored the veteran. Petitioner made an Oral Appeal to the Store Manager who turned out to be Ms. Teresa Castillo. Petitioner saw the store Manager eating in the dinning-room at McDonald's Restaurant and said,

"Excuss Me Miss, Are You The Manager Here?" She said,
"Yes, I Am The Manager Here". I then told her,
"Most Days That I Come Here To Eat, The Employees At The Service Counter give My Food-Order To The Janitors To Bring Me who had been mopping floors, emptying trash cans, cleaning tables, cleaning soda machines, cleaning ice-machines, and without washing their hands."

Petitioner explained to the Store Manager that he had made several Oral Appeals, but the employees continued unsanitary practices.

The Store Manager, Miss Castillo said " I Will Tell Them ", and petitioner agreed. But not more than three (3) days later, the janitor returned with petitioner's food-order, and without washing her hands. Petitioner re-turned back to the Store Manager and stated that the employees working behind the Customer Service Counter, including Assistant Manager Ivonne Silva, are continuously giving the janitor his food-order, having not washed their hands. The Store Manager then said :

" I Will Bring You Your Food " - Petitioner then agreed with the Store Manager, Miss Castillo.

August 21, 2017, petitioner made an Eat-In food order at the McDonald's Restaurant named in this petition. The janitor came with petitioner's food-order without washing her hands or having on any gloves. The Store Manager had faithfully promised that she would bring the veteran's food to him herself; but she did not. Instead, this time, the Store Manager set hiding in the back of the store watching and waiting from the company's servalience-camera, and recording the video movement onto her cell-phone from the servalience camera.

When the janitor came with food petitioner had already paid for, the veteran Knocked the tray of food to the floor, he feared for his immediate health, safety, and welfare at the McDonald's. Store Manager ran from the hidden area for employees only, and asked petitioner why food on the floor. The veteran stated that ;

" Although you have some Kind of hand-cleaner in the

machine on the wall, the janitor is not using it and she just finished emptying the trash, cleaning tables, mopping floors, cleaning soda-machine and ice-machine. You said that you would bring the food to me, avoiding a problem".

The store Manager then said, "I will get you a new tray of food if you agree to take your food-order outside of McDonald's into a McDonald's Eating Room next to the Walmart bathrooms". Petitioner said no, he do not agree. The store Manager went on and replaced the tray of food that was in the floor.

After petitioner finished eating, he emptied his tray at the trash and started walking towards the exit and noticed the Assistant Manager Ivonne Silva walking in his direction. The veteran and the Assistant Manager bumped shoulders to each others, and petitioner kept walking to the Bus Terminal, and the Assistant Manager kept walking to employee-only-section.

The Store Manager, Ms. Castillo come running out of the store, through the parking-lot and up on the walkway of the bridge that joins the Eastride Bus Terminal with the Walmart-McDonald's Restaurant, shouting :
        "Sir, you can not come back into my store anymore."
Petitioner said "Why"? The Store Manager said, "You hit one of my employees". Petitioner said, "I did not hit your em-

ployee". The Store Manager said, " Yes You Did Because I Seen You On The Camera". Petitioner said, "We Bumped Into Each Other". The Store Manager said, " You Hit Her With Your Shoulder". Petitioner said, "We accidently bumped into each other, but did "she" say I hit "her"? The Store Manager said "no, but I seen it from the camera".

By the time this conversation ended between the veteran and the McDonald's Store Manager, petitioner had walked the store Manager from the bridge back into the McDonald's Restaurant, through the parking lot, The veteran stated, "Ms. I am sorry if you think that I hit your employee, but the incident will not happen again". she said no, and called 9-1-1 emergency police.

When police arrived at McDonald's located inside the Walmart Store, it was two police officers. One officer spoke with the store Manager about 20 feet away while the other officer spoke with the veteran. Petitioner told the officer before him that the Store Manager allowed the janitor to keep bring his food-order from mopping the floor, emptying the trash cans, cleaning the tables, cleaning soda-machine and ice-machine, and without washing her hands (a female janitor).

After police officers heard both sides of the story, they Ordered the veteran not to return inside McDonald's Restaurant unless he had written authorization, but said petitioner was allowed

continued free access to the Walmart Store in it's self. The veteran feared for his immediate health, safety, and welfare.

See attached El Paso Police Report Number OCA 17-233113 dated August 21, 2017. It states,

"Officers J. P. Valles #2165 and S. Dominguez #3132 working as 1F194, were dispatched to 7101 Gateway west (McDonald's inside Walmart) reference to an assault in progress type of call. Upon arrival the officers met with the reporter (store manager), who advised the officers that one of her employees had just been assaulted by the offender. The reporter stated that the victim was passing by and holding a tray, when the offender was walking towards the victim. The reporter stated that the offender struck the victim on her shoulder with the offender's shoulder, making her drop the tray she was holding. The victim advised the officers that she did not feel pain and prosecution was not desired against the offender. The reporter advised the officers that it has been an ongoing issue, the offender enters the business and becomes verbally aggressive towards the staff. The reporter advised the officers that the offender is no longer welcome inside the business. The officers requested the reporter to approach the scene and criminally trespass the offender, which she did in the presence of the officers. The offender advised the officers that

he understood. The officers advised the offender of the conse-
quences of returning to the address of occurrence and checked
the offender for warrants at which time the offender checked
clear. The offender was advised and sent on his way. The re-
porter was issued an incident information card and advised
accordingly.

This court must note that the veteran asked both, the responding
police officers to the McDonald's incident along with the Store Manager,
where do he go for administrative appeal. They both, Police Officers
and the Store Manager said:

       McDonald's Restaurant

       Castro Enterprises

       3332 Wedgwood Street

       El Paso, Texas

See attached Administrative Appeal made by petitioner per-
taining to McDonald's Restaurant in this petition, dated August 23, 2017;
And to this date, McDonald's Restaurant - Castro Enterprises at neither
of the four (4) locations shown in the Administrative Appeal has re-
sponded.

Petitioner, the veteran states that two (2) of the defendants in this
case, Walmart Store and McDonald's Restaurant frequently served his
foods from their hands carrying bacteria, thereby contaminating

the foods over a three (3) year period. That such bacteria entered through the mouth and worked it's way into the veteran eyes, causing petitioner to seek emergency medical treatment at the University Medical Center in El Paso, Texas along with Texas Tech University Medical Center in El Paso, Texas for bacteria gaining access inside his eyes, through his mouth, and he fears for his immediate health, safety, and welfare.

Footnote: See Attached U.S. Veteran Identification Card colored copied, and petitioner's social security card-colored copied.

Bacteria is a member of a large group of unicellular microorganisms which have cell walls but lack organelles and an organized nucleus, including some which can cause disease. Synonyms; illness, ailment, infection, disease, disorder, sickness, and more. Most bacteria multiply by a process called binary fission. A single bacterial cell, the "parent," makes a copy of its DNA and grows large in size by doubling its cellular content. The doubled contents are pushed out either end of the cell. Then a small fissure emerges at the center of the parent, eventually splitting it into two identical "daughter" cells.

Antibiotic resistance is a phenomenon where infectious bacteria are no longer susceptible to previously effective antibiotics. This court should note that the August 28, 2017 Administrative Appeal by petitioner, sent to Robert Castro - President of Castro Enterprises, Inc. regarding the McDonald's Restaurant that the store Manager and Police Officers claimed owned the Restaurant inside Walmart Department Store, sent the veteran to 3332 Wedgewood Street, El Paso, Texas on appeal; Written appeal

reads as follows;

"Dear Mr. Castro,

August 21, 2017, as a regular customer, I entered one of your McDonalds Restaurants located in Walmart shopping center at 7101 Gateway Blvd., West, El Paso, Texas. An employee working as a janitor, served me the meal without washing her hands or having on gloves. Previously, I had pleaded with managers and staff at this McDonald's location on several occasions, not to allow the person acting as the janitor who is mopping floors, emptying trash cans, and cleaning machines such as soda and ice machines, not to deliver my food to the table, as they claim policy resently requires them to bring customers In-To-Eat, their food.

The person claiming to be Store Manager had faithfully promised me more than once that she would not allow this to happen. Staff at the Cash Registered assured me this would not happen again. It happen for the seventh (7th) time on August 21, 2017, and I bumped into one of the under-managers, and the tray of food attempt to serve me by the janitor was knocked of the floor.

The Store Manager replaced the tray of food that was knocked to the floor, but called police regarding me bumped into the other staff member. When police arrived, store Manager showed the videos in her cell-phone which she had recorded from your servelience camera, and requested that I be permanently expelled. The police officer followed the

Store Manager request, but said that I needed a letter in writing which would authorize me to return in the store without restrictions.

I have been in contact with an attorney concerning this matter, but thought you might would investigate and eliminate me being expelled, so that I can peaceably eat at McDonald's Restaurant, without the burden of extraordinary cost and humiliation.

The same day of the incident, August 21, 2017, I went to a McDonald's Administrative Office located at 3332 Wedgewood street in El Paso, Texas in search for an Administrative Supervisor. Mr. Joe Lopez said that Ms. Angie Silva was the person in charge over there; But to this end, she, Angie Silva has not been able to be reached.

At your earliest time possible, please send me a breif letter regarding this complaint, and allow me normal service at McDonald's Restaurant located in Walmart Shopping Center at 7101 Gateway Blvd. West, in El Paso, Texas 79925.

Your Kindness in this matter is being embraced with gratitude profound.

Respectfully Yours,

cc: Robert Castro - President, Castro Enterprises

    330 Bartlett Drive, El Paso, Tx 79912

(2) Robert Castro - President, Castro Enterprise

12253 Golden Sun Drive, El Paso, Tx. 79938

(3) Robert Castro - President, Castro Enterprises

745 Kapriz Avenue

El Paso, Tx. 79932

HADI ABDUL HAQQ

United States Veteran

306 E. Paisano Drive

PMB# 215

El Paso, Texas 79901

                           ''
cc: p/f


     Bacteria is a very large group of microorganisms comprising one of the three domains of living organisms. They are prokaryotic, unicellular, and either free-living in soil or water or parasites of plants or animals. Microorganism is an organism that can be seen only with the aid of a microscope. Microorganisms includes bacteria, protozoans, algae, and fungi, found in rotting matter, in air, in soil and in living bodies, some being the germs of disease.

     Bacteria can use most organic and some inorganic compounds as food and some can survive extreme conditions. Pili Bacteria is hair-like appendages on the outside of the cell allow it to stick to surfaces and transfer genetic material to other cells. This can contribute to the spread

of illness in humans.

Anaerobes, or anaerobic bacteria, can only grow where there is no oxygen. In humans, this is mostly in the gastrointestinal tract. They can also cause gas, gangrene, tetanus, botulism, and most dental infections.

Facultative anaerobes, or facultative anaerobic bacteria, can live either with or without oxygen. They are mostly found in soil, water, vegetation, and some normal flora of humans and animals.

Mesophiles, or mesophilic bacteria, are the bacteria responsible for most human infections. They thrive in moderate temperatures, around 37°C. This is the temperature of the human body. Cells acquire new genetic material through processes known as conjugation, transformation, or transduction. These processes can make bacteria stronger and more able to resist threats, such as antibiotic medication. Some types of bacteria can cause diseases in humans, such as cholera, diptheria, dysentery, bubonic, pneumonia, tuberculosis, typhoid, and many more.

If the human body is exposed to bacteria that the body does not recognize as helpful, the immune system will attack them. This reaction can lead to disabilities. Scientist and health authorities are calling on doctors not to prescribe antibiotics unless it is necessary, and people to practice other ways of preventing disease, such as good food hygiene, hand washing, vaccination, and using condoms.

This petition states that the defendants, all three (3) of them, willfully, Knowingly, and deliberty contaminated the veterans cooked foods with bacteria on a daily basis, and for nearly four (4) years. Such contamination caused the petitioner emergency medical treatment, and has resulted in permanent injury.

Sometime about three years prior to this date, petitioner went to the Emergency Room at University Medical Center in El Paso, Texas advising doctors that bacteria lives in the water of his eyes; That the bacteria scratches the veterans eyes, bite the inside eye-lids, blocks the vision from clearity and hide from eye-drops behind the eye-ball and above the the eye-ball. The veteran told the doctors that the cause of the bacteria was unsanitary employees selling petitioner contaminated foods.

Emergency doctors used a microscope-light to see the bacteria living in petitioner eyes, then prescribed the veteran "Flonase", and referred the petitioner to Texas Tech Medical Center, in El Paso, Texas. Flonase is a nasal spray that has an active ingredient called Fluticasone Propionate. It is a synthetic corticosteroid. The chemical Fluticasone Propionate is white in color. Flonase nasal spray also contains microcrystalline cellulose and carboxymethylcellulose sodium, dextrose, 0.02% w/w benzalkonium chloride, polysorbate 80, and 0.25% w/w phenylethyl alcohol, and has a pH between 5 and 7.

The Flonase drug was prescribed for a period of thirty (30) days.

Flonase Nasal Spray is a prescription medicine used to treat non-allergy nasal symptoms such as runny nose, stuffy nose, sneezing, nasal itching, and irritated watery eyes.

Using as directed, the flonase cleared petitioner eyes after thirty (30) day use; But the defendants continued contaminating the foods, and the bacteria returned and stayed. Ms. Asmik Asatrian, M.D. was the veteran physician at Texas Tech Medical Center in El Paso, Texas. Petitioner advised this physician that bacteria was living in the water of his eyes do to contaminated foods by store employees. Asatrian, M.D. ordered visine with instructions to meet the Ophthalmologist at the Texas Tech Medical Center in El Paso; For petitioner to do so.

Petitioner met with female and male Ophthalmologist at the Texas Tech Ophthalmologist Clinic. The female ophthalmologist instructed petitioner; after the veteran told her that bacteria was living in the water of his eyes, and using the various eye-drops only make the bacteria go to the back of the eye-ball or above the eye-ball, but then they come back out. She then used a microscope-light to see the bacteria and prescribed claritan, plus eye-drops.

Petitioner returned to the Ophthalmologist clinic, and after examination of the veteran eyes, the male Ophthalmologist said that he would send the petitioner to a specialist, but only treated the veteran for "Glaucoma".

Ms. Ana is a librarian at the Main Library in El Paso, Texas. She is between the age of 60 and 70 years old. During the past one or two years, Ms. Ana has been helping petitioner to order-purchase the "Flonase" medication through the internet On-Line.

Walmart Store Incorporated is the chaif operator of each Walmart Department Store in the United States, including the Walmart Department Store located 7101 Gateway Blvd. West, El Paso, Texas. The Walmart Company Headquarters is and was responsible for the overall corrections and customer services at each Department Store in the frame-work of the company. They was to see to it that their Administrative Store Managers resolved each appeal, whether appeal be written or Oral, and kept all customers out of immediate fear of their health, safety, and welfare, including the veteran.

The Walmart Company was to assure each registered customer that he or she would not be threatened by staff members arising out of disagreement of service, or expelled from the Department Store by police which was caused by managers and staff, including the petitioner. The Walmart Store Incoporated defendant, made available bacteria used to contaminate petitioner's cooked foods at the Walmart Department Store named in this petition, including at the McDonald's Restaurant in this petition.

Ms. Maria Salas is a District Judge at the El Paso County Courthouse.

UNITED STATES VETERAN

**Footnote:** In June of the year 2019, Walmart Department Store officially modified the name of it's "Customer Service" department to be re-named as simply "Services" department, after the dates of incidents mentioned in this lawsuit, which would, for the purpose of this lawsuit, imply less of a legal duty in which the plaintiff counted on, during the whole time he appealed to the "Customer Service" department, now known as "Services".

**Footnote:** The Bar should note that about 30 days after the March 31, 2019 El Paso Police incident report at Walmart attached hereto, Walmart appears to have stop selling the "Talarpio Fish-Cooked Fried" as they did for at least three (3) years to petitioner, which indicate such cooked fish by the frying-unit could also been carrying bacteria from the waters or dry land, and employees gloves.

**Footnote:** The Bar must note that although "Unknown Agents and Unknown Officer" as just specified, are not defendants to this lawsuit, during the past thirty (30) years plaintiff has been homeless-outside, they have been laising plaintiff's food, medicines, and beverages with poisonings that severely weakens the teeth, other poisonings causes respiratory difficulties, other poisonings causes severe diarea, other poisonings they uses cause heart complications, other poisonings they uses severely weakens the joints in the body, other poisonings they uses severely tightens leg muscles and arm muscles, other poisonings they uses causes minor siezures, other poisonings they uses causes

UNITED STATES VETERAN

extremely high blood preassure, other poisonings they uses strip the bones of its calcium, other poisonings they uses prevent regular urination. They, Unknown Agents and/or Unknown Officers uncover plaintiff disabilities from lawsuits and hospital records, than uses other poisonings to enhance these disabilities and deformaties.

The Unknown Agents and Unknown Officers send visual threats such as male and female reckless-motorist and violent groups walking. They keep raping plaintiff's female friends by using the females relatives and associates as the offenders, drug related. They keep whipping plaintiff's female friends and threatening these females with food poisonings to prevent a Joint Relationship Agreement. They threaten plaintiff's female friends who are not drug addicts/dealers from accepting any kind of gift, money, or prize plaintiff may give to them; Or rob them of it.

she was one of the few people who stopped and spoke with petitioner at the Walmart Department Store while the veteran was eating the cooked food during lunch. Petitioner told Ms. Salas that he usually eat lunch from the Walmart Store named in this petition because the Deli Unit of the store sell hot foods and that the "Bus 59" comes directly to Walmart from El Paso County Courthouse, and that it was petitioner's daily routine.

While the female Ophthamologist at Texas Tech Medical Center in El Paso, Texas directed the veteran to use the "Claritan" one time each day and to use the eye-drops twice each in an effort to eliminate the bacteria within 30 days. But in thirty days, petitioner returned to the female Ophthamologist and advised her that he was allergic to the "Claritan", and that the bacteria continued living in the water of his eyes. The female ophthamologist at Texas Tech Medical Center in El Paso, Texas change the veteran's medication from "Claritan and one kind of eye drops" to "Two (2) kinds of eye-drops", to be used at least twice a day and as needed. After using the over-counter non-prescription neccessary eye-drops for a period of four (4) months and the bacteria was still in the veteran's eyes, petitioner consulted with a pharmacist at CVS store in downtown El Paso, Texas about returning to the use of "Flonase", which he sold over-the-counter as a non-prescription drug.

The pharmacist said although he recognize "Steroid" as being one of the active ingredients in the drug Flonase, but that such particular

steroid would not harm petitioner unless continued over a very long period of time and on daily basis.

See El Paso Police Report Number OCA 19-090092 for the Walmart Store dated 3/31/2019. When police arrived, petitioner told Officer Holmes that the Walmart Store Employee name Rodriguez had threatened to hit the veteran during the 3/31/2019 incident at Walmart Store, using the bag of fish as the weapon. The police officer never charged Mr. Rodriguez, but rather, secretly omitted this portion of the incident from the Police Incident Report dated 3/31/2019.

## CONCLUSION OF COMPLAINT

28 U.S.C. Code 1915(e)(1) authorizes this court to request attorney to represent any person unable to afford counsel. Petitioner, the veteran respectfully request the representation of counsel in this entire lawsuit, based upon his poverty and disabilities. In support of this complaint, petitioner has attached the Walmart Police Incident Report No. 19-090092, the McDonald's Police Incident Report No. 17-233113, his Veteran's I.D. Colored Copied, Social Security Card-Color Copied, Administrative Appeal to Castro Enterprises concerning McDonald's Restaurant, along with a Proposed Order to support this petition.

The defendants in this case, all three (3) of them, Walmart Department

UNITED STATES VETERAN

Store at 7101 Gateway Blvd. West in El Paso, Texas; and McDonald's Restaurant at 7101 Gateway Blvd. West in El Paso, Texas; and Walmart Stores Incorporated at 702 S.W. 8th Street in Bentonville, Arkansas, individually as well as collectively, is and was at all times mentioned in this lawsuit, unconstitutional, inhumane, uncivilized, inappropriate, unfair, illogical, rediculous, aggressive, disgraceful, and illegal onto petitioner Hadi Abdul Haqq - United States Veteran, by their acts, policies, practices, procedures, standards, and training. All three (3) defendants forfeited the petitioner Hadi Abdul Haqq - United States Veteran chances for clearer vision, less severe headaches, lower medical expenses, cheaper eye-glasses, less Optic Research, less pain medication, ability to read and write more normal, the lower price merchandise, the security of marketing, the convenience of marketing, the assistance of marketing services, and the defendants, all three (3) of them, enhanced petitioner's chances to become blind.

They, Walmart Department Store, McDonald's Restaurant, and Walmart Stores Incorporated named in this lawsuit, has created more stress and strain onto the petitioner, and presented the United States Veteran with the agony of defeat. The bacteria in petitioner's eyes caused by the defendants, they bite wholes inside petitioner's eye lids and above his eye balls inside the eyes, to crawl into so that they can hide from active eye-medication. Once the eye-medication subside, the bacteria comes back out the wholes inside the eyes of petitioner.

Footnote: Ms. Aide Gonzales is or was petitioner's social worker at the Opportunity Center in El Paso, Texas - shelter for the Homeless. She gained him medical treatment through University Vision Center, and Lens Crafters as well, for his eyes.

## ARGUMENT(S)

The defendants, all three (3) of them, Walmart Department Store, McDonald's Restaurant, and Walmart Stores Incorporated, they understood the veteran was homeless-outside, watching him come shopping with all of his belongings in a large Army-Bag on a cart, strapped down with two other small bags. They seen petitioner was black and extremely dark complexion, and reasoned that he accompanied disabilities with a white beard at his older age. For these reasons in part, did not want petitioner inside neither the Walmart Store or McDonald's Restaurant on daily basis. Federal statutes prohibit discrimination on basis of sex, age, race, nationality, religion, or being handicapped; See e.g. Title VII of 1964 Civil Rights Act. See Report (Judiciary Committee) No. 873, Feb. 10, 1964 [To accompany S. 1732]; House Report (Judiciary Committee) No. 914, Nov. 20, 1963 [To accompany H. R. 7152] Cong. Record Volume 110 (1964).

The purpose of S. 1732 is to achieve a peaceful and voluntary settlement of the persistent problem of racial and religion discrimination or segregation by establishments doing business with the general public, and by labor unions and professional, business and trade association. The defendants is and was violating petitioner rights as cited under the First (1st), Fifth (5th), Eighth (8th), Ninth (9th), and Fourteenth Amendments to the United States Constition.

Section 1 of the Fourteenth Amendment states;

All persons born or naturalized in the United States and subject to

the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of United States; nor shall any state deprive any person within it's jurisdiction the equal protection of the laws.

Section 5 of the Fourteenth Amendment to the United States Constitution gives Congress the authority to enforce the Fourteenth Amendment through legislation. Congress used their authority during reconstruction to enact laws that sought to curtail vigilantism and misconduct by southern state and local government officials. These laws which provided both criminal and civil penalties, fell into disuse doing the 1880's, but were revived in the 1960's. The Supreme Court, in a series of rulings, gave individuals the right to sue local government officials (anywhere in the United States, not just in the south) for damages for violations of their civil rights.

After defendants Walmart Department Store and Walmart Stores Incorporated issued the veteran a Walmart Shopping Debit Card for a fee of five dollars ($5.00) per month, they willfully, knowingly and deliberately conspired to expel petitioner from the property permanently, unlawfully, and wrongfully. The Fifth Amendment to the United States Constitution holds:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in

actual service time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

The constitution guarantee of equal protection of the laws means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty, property, and in their pursuit of happiness. See People vs. Jacob, 27 Cal. App. 3d 246, 103 Cal. Rptr. 536, 543; 14th Amend., U.S. Const. Doctrine simply means that similarly situated persons must receive similar treatment under the law. See Dorsey vs. Solomon, D.C. Md, 435 F. Supp. 725, 733.

Petitioner was a customer at both places, Walmart Department store as well as McDonald's Restaurant named in this lawsuit. A customer is one who regularly or repeatedly makes purchases of, or has business dealing with, a tradesman or business. See AiKae Mills vs. United States, D.C.B.C., 53 F. Supp. 524; ArKwright Corporation vs. United States, D.C. Mass., 53 F. Supp. 357, 361.

This court reviews pro se pleadings under a less stringent standard than those drafted by attorneys, and such pleadings are entitled to liberal

construction that includes all reasonable inferences that can be drawn from them. See Haines vs. Kerner, 404 U.S. 519, 520-21 (1972) (explaining the lower standard for pro se pleadings). At the same time, however, parties proceeding pro se are still required to provide sufficient facts in support of their claims; See United States vs. Pineda, 988 F. 2d 22, 23 (5th Cir. 1993).

Petitioner, the veterans argues that Walmart made available to employees in the Deli Department special Utensils, Gloves, and Hand-Papers, designed to pick up the foods without touching foods with their hands and without touching the foods with their naked-gloved-hands. Once gloves are put on, they were instructed to either pick the foods up with utensils or either pick the foods up with Hand-Papers.

Petitioner argues the employees in the Deli Department wearing the thin plastic gloves, opening doors with the gloves on, turning on and off cooking machines with the gloves on, weighing foods on the scale with the gloves on, resting their hands on the counter-top with their gloves on, wiping their irritated hands on their dirty apron with their gloves on, scratching an itch on their body with their gloves on, sneezing and coughing with their gloves on, touching their hair with their gloves on, adjusting their eye-glasses with their gloves on, fan away insects using their hands with their gloves on, then keep picking-up the veteran's fish and chicken without using special utensils and without using the Hand-Papers, with gloves on.

Petitioner asked the Deli Employees during the past three (3) years not to touch his foods with their naked hands in gloves. Petitioner went to the Customer Service Center and requested respresentatives to not allow the Deli Employees to handle his foods with their naked-hands in gloves, but the Deli Employees still never stopped; Petitioner remained in immediate fear of his health, safety, and welfare. The Eighth (8th) Amendment to the United States Constitution holds;

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.

Petitioner made an Oral Administrative Appeal to Ms. Saundra, who is or was a Customer Service Manager for Walmart store. Petitioner made at least three (3) Oral Administrative Appeals to Ms. Jacqueline, who is or was a Customer Service Manager at the Walmart store. Petitioner made at least three (3) Oral Administrative Appeals to Mr. Edgar, who is or was an Assistant Store Manager at the Walmart store. Petitioner made an Oral Administrative Appeal to Mr. Raynard, who is or was an Assistant Store Manager at the Walmart Store. Petitioner made an Oral Administrative Appeal to Mr. Mike, who is or was a Co-Manager of the Walmart store. The veteran explained to each of these Walmart store Managers that the employees working in the Deli Unit is handling his foods without using food utensils or Hand-Papers, and that once petitioner request that they do so, still, they give him the same peice of cooked meat that they had previously played over with the dirty gloves on. All to no avail.

All of these administrative employees (managers) committed Negligence Per se. It is a form of negligence that results from violation of a statute. Conduct, whether of action or omission, which may be declared and treated as negligence without any argument of proof as to the particular circumstances, either because it is in violation of a specific statute or valid municipal ordinance, or because it is so palpably opposed to the dictates of common prudence that it can be said without hesitation or doubt that no careful person would have been guilty. As a general rule, the violation of a public duty, enjoined by law for the protection of person or property, so constitutes. Seim v. Garavalia, Minn., 306 N.W. 2d 806, 810 (1981). Sheran, chief Justice held;

This case arises from a dog bite inflicted upon the minor plaintiff by defendant's dog on May 2, 1979. The incident occured after plaintiff Shannon Marie Seim, two days from her seventh birthday, called upon defendant's six-year old son Scott. Tied to a tree in the backyard was defendant's dog, Hollow. The dog was friendly and had no history of growling or snapping at members of the defendant's family or at stangers. Hollow had just received some table scraps when the two children entered the yard. Encountering Hollow, shannon decided to pet him and asked scott if he bit. Although Scott said "no" shannon asked him to pet Hollow first. Scott, who was standing to the right of the dog, petted him, at which time Hollow barked. Shannon, who was standing in front of the dog, then petted him on top of his head.

When she did so, Hollow jumped up, knocked her down, and bit her in the face. The wound caused several severe lacerations in her cheek and near her lower lip. Stitches were needed to close the wound and medical records indicate that the scarring will be permanent. Medical expenses totalled $325.50, but two doctors recommended plastic surgery in the future, which would require the expenditure of an additional $2,300.

Plaintiff subsequently initiated an action based upon the provisions of Minn. Stat. § 347.22 (1980). This statute states that: "If a dog, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained.

At trial, defendant was permitted to raise the affirmative defenses of contributory negligence and assumption of risk. At the close evidence, District Court Judge Thomas G. Forsberg set plaintiffs on special damages at $325.50 and directed a verdict in favor of plaintiffs on the issue of statutory liability. However, the judge submitted the question of the minor plaintiff's contributory * 209 negligence to the jury. The jury returned a verdict apportioning 50% of the negligence to the minor plaintiff and 50% to the defendant.

Damages were set at $2,000. Plaintiff appeal from the $1,162.75 judgment entered in their favor. [2] We reverse and remand this case to the district court with directions to restore the full verdict of $2,325.50. In addition, we confer the district court with jurisdiction to entertain a motion for a new trial on the issue of damages.

Petitioner, the veteran, is and was during all times mentioned in this lawsuit, pursuing federal disabilities benefits at the Office of the Attorney General of the United States under the U.S. Department of Justice, and lacked the means of self support, but relied on Executive Staff. Employees such as the managers to treat, resolve Oral Appeals, and treat him like other customers. Executive employees are persons who duties include some form of managerial authority, actually directing the work of other persons. Persons whose duties relate to active participation in control, supervision, and management of buisness, or who administer affairs, or who direct, manage, execute or dispense. The term executive employees carries the idea of supervision of or control over ordinary employees. See Steiner v. Pleasantville Constructors, 181 Misc. 798, 46 N.Y.S. 2d 120, 123.

They, the Walmart store defendant is guilty of Passive Negligence; It is the failure to do something that should have been done. It is negligence which permits defects, obstacles, or pitfalls to exist on premises; that is, negligence which causes dangers arising from physical condition of land. Defendant Walmart Department store is guilty of Subsequent Negligence. It

exist where defendant sees plaintiff in a position of danger and fails to exercise due and proper precaution to prevent injury to plaintiff. See Holman v. Brady, 241 Ala. 487, 3 So. 2d 30, 33.

The trial was had on the simple negligence count and on the wanton count, No. 3, as amended.

The rule that obtains as to the giving of affirmative instruction has been a matter of frequent consideration and need not be repeated here. Alabama Power Co. v. Dunlap, 240 Ala. 568, 200 So. 617; McMillian v. Aiken, 205 Ala. 35, 88 So. 135.

When the evidence is carefully considered, it shows no more than that the driver of the truck that preceded plaintiff's automobile was guilty of initial, simple negligence in turning to the left at the intersection of the highway without looking in his glass to ascertain if there was vehicle immediately following, or without duly signalling his intention to so turn to the left into the other driveway approaching a road which he proceeded at, or about at, a right angle.

We may state at this juncture that the driver of a truck on a public highway may assume that others will observe the law of the road. Hammell Dry Goods Co. v. Hinton, 216 Ala. 127 So. 638. However, one must not drive a motor vehicle on the highway which is so constructed or loaded as to obstruct a view of the of

highway to the rear. Michie's Code of 1922, § 1397 (9a), Code 1940,

Tit. 36, § 37. A driver of a vehicle before starting, stopping, backing,

or turning from a direct line must first see that such movement

can be made in safety, and, when another vehicle may be affected,

must give a signal of his intention. Michie's Code of 1922, § 1397 (65),

Code 1940, Tit 36, § 17. A conscious failure to use the required

means to avoid peril, together with indifference as to consequences,

may constitute willful misconduct. However, it is established that

there is no wanton injury without a knowledge of conditions

which make the act causing it likely to result in injury, and con-

sciousness of danger. It does not result from mere negligence in

the failure to have knowledge and consciousness. Buffalo Rock

Co. vs. Davis, 228 Ala. 603, 154 So. 556.


March 31, 2019, petitioner went to Walmart Department Store named in

this lawsuit for lunch and dinner foods. His last stop in the store was the

Deli Department. The two (2) employees on duty in that department was Radri-

guez and a female previously complained of by petitioner to Assistant

Store Manager Edgar. The veteran asked Mr. Rodriguez for one (1) piece

of cooked fish. He asked Rodriguez not to pick-up the fish with his

naked-hands in gloves; but Rodriguez refused, and petitioner raised a

small plastic Walmart-Bag containing a pack of hot-dogs and grapes,

then threw it over the service counter in Rodriguez direction. Rodriguez

then snapped, by raising the bag with the fish in it over his head in a angry

position with his arm cocked back, so as to throw it in the veteran's

face for the purpose of causing injury to petitioner, But he did not release the weapon, being the bagged fish. Threatened petitioner.

Threat is a communicated intent to inflict physical or other harm on any person or on property. It is a declaration of an intention to injure another or his property by some unlawful act. It is a declaration of one's purpose or intention to work injury to the person, property, or rights of another, with a view of restraining such person's freedom of action. See State v. Schweppe, Minn., 237 N.W. 2d 609, 615.

Defendant was found guilty by a jury of the crime of terroristic threats, Minn. St. 609.713, subd. 1. In this appeal from the judgment of conviction and from an order denying his alternative motion for a judgment of acquittal or for a new trial, defendant principally asserts that (1) the evidence was insufficient as a matter of law to support the jury's finding of guilt, (2) prejudicial error occurred when the prosecution introduced evidence of defendant's homosexuality, (3) the prosecution failed before trial to give proper notice of his intention to use this evidence, and (4) defendant was denied his constitutional right to the effective assistance of counsel. We find that the evidence was sufficient to sustain the jury's verdict, there was no prejudicial error, and defendant was afforded a fair trial. Accordingly, we affirm.

Defendant, age 31, was charged and convicted of making

terroristic threats directed at Douglas Grotte, age 16, and his mother on the evening of May 7, 1973. That evening defendant spent some time at the Family Cue, a recreation center Fairmont largely frequented by teenagers. While at the Family Cue, he talked to several persons, asking them questions about Douglas Grotte. He had an extended conversation with one Jon Larkin, age 15, who was an acquaintance of Douglas Grotte.

Jon Larkin testified at trial that defendant asked him questions about Grotte's whereabouts, his work schedule, and daily habits. He asked Larkin to go up to Grotte and say his (defendant's) name and then report back to defendant how Grotte reacted. He said that Grotte should be "real scared". Defendant wrote his name and his telephone number on a slip of paper and gave it to Larkin, so the latter could call him with the information he had requested.

Three other teenagers, schoolmates of Grotte, testified that they had overheard defendant make certain statements in the Family Cue that night. Mike Meyer, age 15, testified that he heard defendant say the word "kill" but did not hear anything else defendant said. He attempted to phone Douglas Grotte that evening.

Peter Sukalski, age 15, heard defendant say that "he wanted to kill Doug and his mom". He also heard him calling

Jon Larkin names.

Tom Fisck, age 15, testified that he "heard something about killing Doug Gatte. [He don't] know what exact words were, but [he] heard the word "Kill" and "Doug" right next to each other". He said he heard nothing eles in the conversation.

At some point in the evening, Douglas Grotte entered the Family Cue. Jon Larkin stated that he was talking to defendant when Grotte entered, and that defendant left Larkin at that time and approached Grotte. Defendant persisted in asking Grotte if he could have a minute of his time, and Gatte kept refusing to talk to him. After approximately 10 minutes, Grotte's ride came and he left the recreation center.

The next day, Jon Larkin approached Grotte during the lunch hour at school and him, " Tom Schweppe was looking for [you] at the Cue the other night." Gatte testified that one Randy Laffey told him after school that defendant had made threats against him. Grotte stated he was "scared" about the threats. After he got home from work (Grotte had a part-time, after school job). Grotte told his mother about the threats. After supper that day, May 2, Douglas Grotte went to the police station to complain. Defendant was subsequently arrested on the charge of making terroristic threats.

Petitioner, the veteran argues that he told Ms. Jacqueline, the Customer Service Manager that Rodriguez had threatened the petitioner, petitioner told the CO-Manager at Walmart Department Store that Mr. Rodriguez had threatened to hit petitioner in the face with the bagged fish, and petitioner told officer Holmes, a responding El Paso Police officer, that Mr. Rodriguez threatened to hit the veteran in the face with the bagged fish. They expelled petitioner and officer Holmes omitted that portion of the incident from El Paso Police Incident Report Number OCA 19-09002.

Ms. Jacqueline, Customer Service Manager said to petitioner prior to deciding police, "the next time incident happens with you, then you can not come back into the store, because I realize you have told me what they keep doing on a few occasions".

Mr. Mike said to petitioner prior to deciding police, "the next time incident happens with you, then you can not come back into the store". But Mr. Mike returned to petitioner with an Assistant Store Manager and a Security Agent saying to petitioner that, "Rodriguez said he is thinking about calling police, and for that reason, now you can not come back into the store".

Petitioner argues that the Walmart Department Store is guilty of Gross Negligence; It is the intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another. It is an act or omission respecting legal duty of an aggravated

character as distinguished from a mere failure to exercise ordinary care. It is a heedless and palpable violation of legal duty respecting the rights of others. Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances required of a person of ordinary prudence. Gross negligence consist of conscious and voluntary act or omission which is likely to result in grave injury when in face of clear and present danger of alleged tortfeasor is aware. See Glaab v. Caudill, Fla. App., 236 So. 2d 180, 182, 183, 185;

 In this negligence action, brought under the guest statute, the plaintiff-wife was a passenger in defendant-husband's car driven by his wife Marie. At the close of all evidence at trial the court reserved ruling on defendants motion for directed verdict and submitted the cause to the jury. The jury returned a verdict in favor of plaintiffs and, thereafter the court granted the defendant's motion upon which ruling was reserved as aforesaid. Judgment was entered thereon and plaintiffs appeal. We reverse.

 The CO-Manager Mr. Mike, the female Assistant Store Manager, and the white skin looking Security Agent said to petitioner, individually, "If You Sign This Form The Security Agent is Holding, Then We Will Not Call The Police. The Form states That You Agree Not To Go Back Into Any Walmart Stores In The United States." Petitioner told the CO-Manager NO, he do not agree; Petitioner told the Assistant Store Manager No, he do not agree; And petitioner told the Security Agent NO, he do not agree. This

portion of the incident mirrored bribery and petitioner reported it to the responding police officer, who was officer Holmes of El Paso Police Department. Officer Holmes omitted this "bribery" portion of the incident from the El Police Incident Report Number OCA 19-090092.

Bribery is the offering, giving, receiving, or soliciting of something of value for the purpose of influencing the action of an official person in the discharge of his or her public or legal rights and duties. See 18 U.S.C. Supra. § 201 (b), whoever directly or indirectly, corruptly gives, offers or promises anything of value to any public official with intent to influence that person's official act, is guilty of bribery. The punishment prescribed by the statute is a fine of an amount not more than three times the monetary equivalent of the thing of value, or imprisonment for not more than fifteen years, or both. Additionally he/she can be disqualified from holding any office of honor, trust, or profit under the U.S. Government. See Smith v. Pure Oil Co., 278 Ky. 430, 434 (Ky. 1939).

This is an action for libel by Walter Ray Smith against Pure Oil Company, H.D. Sanders and James Adams. The petition was dismissed on demurrer and the plaintiff appeals.

Reversed.

It charges that in March, 1938, the defendants erected or caused to be erected and displayed a large sign board at "Sanders Servistation", the company's property, on U.S. Highway No. 25, in Laurel County, containing the following false and malicious

statements:

"WARNING! Turn left. U.S. 25-E Constables
Free Grabers May Get You in Whitley County
Ray Smith County Attorney Get 40% of Fine
Plus $5.00 Cost."

The plaintiff was and is the County Attorney of Whitley County.
His petition states that he is the person named and referred to in
the publication; avers that it means that he as a "free grabber"
would corruptly accept or receive a percentage of fines and
cost being wrongfully assessed against persons traveling in
Whitley County through their arrest by constables, thereby im-
puting his unfitness for the office; that is was intended to
prejudice the public against plaintiff and to subject him to
disgrace, obloquy and ridicule in the performance of his
official duties and in his profession as a lawyer; that the
defendants intended and meant by the statements to charge
him with the crime of unlawfully, feloniously and wrongfully
receiving and accepting as County Attorney a percentage
of fines and cost derived from the conviction of persons
who were not guilty of violating any law, and that the state-
ments were and are false and known to the defendants and
each of them to be so concerning the plaintiff.

Petitioner, the veteran in this lawsuit argues that at the time that the

three executive employees said " If You Sign This Form Then We Will Not Call Police", Mike the CO-Manager, the Female Assistant Store Manager, and the white skin looking Security Agent, they Obstructed Justice, and in the process, violated petitioner rights as cited under the ninth amendment to the United States Constitution. Obstructing Justice is impeding or obstructing those who seek justice, or those who have duties or powers of administering justice therein. The act by which one or more person(s) attempt to prevent, or do prevent, the execution of lawful process. See Toledo Newspaper Co. vs. U.S., 247 U.S. 402, 38 S. Ct. 560, 564, 62 L. Ed 1186. Also See U.S.C.A. §§ 1501 et seq, Model Penal Code §§ 242.1 et seq.

The Ninth Amendment to the United States Constitution holds that,

The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

Petitioner argues now that, while awaiting police, the veteran told Mr. Mike, who is or was CO-Manager at the Walmart Department Store that, petitioner had made Oral Administrative Appeal to Manager Edgar, Manager Saundra, Manager Raynard, and other staff members. Petitioner told the CO-Manager that he requested the Store Manager on several occassions but that the employees kept saying the Store Manager was too busy.

Once police arrived, petitioner explained to both officers in detail what happend in the store, but the veteran went on to tell officer Holmes that

the three (3) Walmart Managers tried to get petitioner to sign a form agreeing not to come into any Walmart Stores in the United States, instead of calling police. Officer Holmes secretly omitted this portion of the incident from the El Paso Police Incident Report Number OSA 19-090092.

The veteran, petitioner argues that the Walmart Department Store named in this lawsuit, using it's agents, employees, and subordinates, is operating inside the unlawfully acts of "Conspiracy". Conspiracy is a combination or confederacy between two or more persons formed for the purpose of committing, by their joint efforts, some unlawful or criminal act, or some act which is lawful in itself, but becomes unlawful when done by the concerted action of the conspirators, or for the purpose of using criminal or unlawful means to the commission of an act not in itself unlawful.

A person is guilty of Conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating it's commission he; (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitute such crime or an attempt or solicitation to commit such crime; or (b) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime. See Model Penal Code § 5.03.

A conspiracy may be a continuing one; actors may drop out, and others drop in; the details of operation may change from time to time; the members

need not know each other or the part played by others, a member need not know all the details of the plan or the operation; he must, however, know the purpose of the conspiracy and agree to become a party to a plan to effectuate that purpose; See Craig vs. U.S., C.C.A. Cal., 81 F.2d 816, 822; Before Garrecht, Denman, and Haney, Circuit Judges;

On December 19, 1934, an indictment was returned in the court below against the appellants and Helen Werner. This accusation, which will be hereinafter referred to as the first indictment, contained two counts, each charging a violation of 18 U.S.C.A. § 88. The first count alleged that the defendants had conspired to secure, by corrupt means, dismissal of an indictment and prosecution in which John McKeon and others were charged with violations of 18 U.S.C.A. § 338, or using mails in execution of a scheme to defraud, and with a violation of 18 U.S.C.A. § 88, the conspiracy statute. The judgement of conviction in the prosecution under the postal laws, hereinafter referred to as the Itala Case, was reversed by this court in a decision handed down on November 8, 1935. Wilkes vs. United States, 80 F.2d 285---.

There are twenty-five assignments of error. Each of these assignments is listed as a "specification" in the appellants main brief, and it is asserted that each relied upon as pointing out prejudicial error. We have here discussed, however, only those assignments that are argued in the briefs.

As to the others, we might well have felt at liberty to disregard the points thereby raised. See Forna v. Coyle (C.C.A.9) 75 F.2d 692, 695, and cases there cited. Nevertheless, we have examined all the other assignments, and have found them to be without merit.

Accordingly, the judgment of the lower court is affirmed, as to each appellant.

Judgment affirmed.

Petitioner argues in this lawsuit that defendant Walmart Department Store has and is at all times mentioned in this case, conspired to commit fraud. Fraud is an intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right. A false representation of a matter of fact, whether by words or by conduct, by false or misleading allegations, or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury. Anything calculated to deceive, whether by a single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or innuendo, by speech or silence, word of mouth, or look or gesture.

A generic term, embracing all multifarious means which human

ingenuity can devise, and which are resorted to by one individual to get advantage over another by false suggestions or by suppression of truth, and includes all suprises, tricks, cunning, dissembling, and unfair way by which another is cheated.

Elements of a cause of action for "fraud" include false representation of a present or past fact made by defendant, action in reliance thereupon by plaintiff, and damage resulting to plaintiff from such misrepresentation. See Johnson vs. McDonald, 170 Okl. 117, 39 P-2d 150; [2014];

Before Moore, O'Malley, and Chen, Circuit Judges. Kenneth M. Carpenter, Chartered, of Topeka, KS, argued for claimant-appellant. Martin F. Hockey, Jr. Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, D.C., argued for respondent-appellee. With him on the brief Stuart F. Delery, Assistant Attorney General, and Bryant G. Snee, Acting Director. Of counsel on the brief were David J. Barran, Deputy Assistant General of Counsel, and Martie Adelman, Attorney, United States Department of Veterans Affairs, of Washington, D.C.. Marvin O. Johnson appeals from the decision of the Court of Appeals for Veterans Claims (Veterans Court) denying his request for referral for extra-schedular consideration of his service-connected disabilities. Because the Veterans Court's interpretation of 38 C.F.R. § 3-321(b)(1), which governs referral for extra-schedular consideration, contravenes the plain meaning of

the regulation, we reverse and remand.

Officer Holmes partner, an unknown policeman, asked the veteran, "If You Know They Don't Want You Coming Into The Store, Why Would You Keep Coming Back?" Petitioner answered "since I set in front of El Paso County Courthouse Each Morning Begging for Money–Change, the Number 59 Bus Comes Directly Across The Street At The Electric Company and Runs Completely to Walmart Store At The Eastside Bus Terminal.

Officer Holmes then told his partner that petitioner was coming because it was a convenient way to shop. Officer Holmes then gave petitioner a case number for the Police Report and said that if the veteran returned back to said Walmart Store without written approval, then petitioner will be arrested for criminal treaspassing.

Petitioner argues that the Store Manager for Walmart Department Store was responsible for the leadership and organization of all managers operating under his supervision. He was to see to it that each Oral Administrative Appeal made by petitioner was totally and completly resolved; That the General Manager for the Walmart Department Store located 7101 Gateway Blvd. West, was responsible for the overall corrections at the Walmart Department Store. He or she, was to see to it that the Department Store operated in a safe and lawful manner for each and every customer,

including the petitioner.

Petitioner argues that he traveled from El Paso County Courthouse to McDonald's Restaurant inside Walmart Department Store, thinking he was avoiding possible food contamination by unsanitary restaurant employees where he usually stay; El Paso Downtown Area. But after eating at the McDonald's named in this lawsuit for a period of about one (1) year, the veteran noticed that the employees serving the foods was unsanitary, and petitioner remained in immediate fear of his health, safety, and welfare at said McDonald's Restaurant. Immediate can best be defined as "relating to or existing at the present time". Another term for immediate is "that which is produced directly by the act to which it is ascribed, without the intervention or agency of any distinct intermediate cause."

When an immediate injury is caused by negligence, the injured party may elect to regard the negligence as the immediate cause of action, and declare in case; or to consider the act itself as the immediate injury, and sue in trespass; See 14 John. 432; 6 Cowen, 342; 3 N.H. Rep. 465; sed vide 3 Conn. 64; 2 Bos. & Pull.

Footnote: The court should note that Walmart Store Surveillance cameras will show on that date and time of the incident at the Deli Unit of the store, Rodriguez came from one work station to another where the veteran awaiting service, then reached

to a small rack above the sink, he got a new pair of plastic gloves from the rack above the sink, he took the old plastic gloves off and trashed them, he rolled the new plastic gloves around in his naked bare hands, he then put the used gloves on, but never washed his hands at the sink that was directly before him, then picked up petitioner's fish with his naked hands in the gloves that he rolled around in his bare hands before putting them on, and refused to use the utensils and/or hand-papers; And petitioner, the veteran was in immediate fear of petitioner's health, safety and welfare.

Petitioner went to the Service Counter at McDonald's Restaurant and asked the young female employee not to allow the lady working on the dinning-room floor to bring his food-order, as the restaurant practices had changed into all Eat-In Customers must have their food-order delivered to the table where seated. Petitioner stated to the female McDonald's Restaurant Employee at the Service Counter, that the lady working the dinning-room floor as the janitor is mopping the floor, emptying trash cans, cleaning tables, cleaning machines, then grabbing petitioner's tray of food without washing her hands. The young female employee operating behind the Service Counter agreed.

Two days later, the young females working behind the Service Counter at McDonald's gave the janitor petitioner's food-order again. McDonald's Restaurant Managers repeated the process a few more times.

The veteran returned to the Service Counter and noticed an Assistant Manager, Ivonne Guadalupe Silva. He explained to Assistant Manager Guadalupe that employee at the Service counter, most days petitioner eat at said McDonald's Restaurant, they give the janitor petitioner's food-order to bring him after the female janitors had been mopping floors, emptying trash cans, cleaning tables, and cleaning soda machines and ice-machines, and without washing their hands. The Assistant Manager agreed, but the workers never changed their practices.

The veteran, returned back to the Service Counter at McDonald's Restaurant and attempted to tell the Assistant Manager-Ivonne Guadalupe Silva again, but this time the Assistant Manager ignored the veteran. Petitioner made an Oral Appeal to the store Manager who turned out to be Ms. Teresa Castillo. Petitioner saw the store Manager eating in the dinning-room at McDonald's Restaurant and said:

"Excuse Me Miss, Are You The Manager Here?" She said, "Yes, I Am The Manager Here". I then told her,

"Most Days That I Come Here To Eat, The Employees At The Service Counter give My Food-Order To The Janitors To Bring Me, who had been mopping floors, emptying trash cans, cleaning tables, cleaning soda machines, cleaning ice-machines, and without washing their hands."

Petitioner explained to the store Manager that he had made several Oral Appeals, but the employees continued unsanitary practices.

The Store Manager, Miss Castillo said " I Will Tell Them ", and petitioner agreed. But not more than three (3) days later, the janitor returned with petitioner's food-order, and without washing her hands. Petitioner returned back to the store Manager and stated that the employees working behind the Customer Service Counter, including Assistant Manager Ivonne Silva, are continuously giving the janitor his food-order, having not washed their hands. The Store Manager then said :

" I Will Bring You Your Food " - Petitioner then agreed with the store Manager, Miss Castillo.

August 21, 2017, petitioner made an Eat-In food order at the McDonald's Restaurant named in this petition. The janitor came with petitioner's food-order without washing her hands or having on any gloves. The Store Manager had faithfully promised that she would bring the veteran's food to him herself; but she did not. Instead, this time, the store Manager set hiding in the back of the store watching and waiting from the company's servalience-camera, and recording the video movement onto her cell-phone from the servalience camera.

When the janitor came with food petitioner had already paid for, the veteran knocked the tray of food to the floor, he feared for his immediate health, safety, and welfare at the McDonald's. Store Manager ran from the hidden area for employees only, and asked petitioner why food on the floor. The veteran stated that ;

" Although you have some kind of hand-cleaner in the

machine on the wall, the janitor is not using it and she just finished emptying the trash, cleaning tables, mopping floors, cleaning soda-machine and ice-machine. You said that you would bring the food to me, avoiding a problem".

The Store Manager then said, "I will get you a new tray of food if you agree to take your food-order outside of McDonald's into a McDonald's Eating Room next to the Walmart bathrooms". Petitioner said no, he do not agree. The Store Manager went on and replaced the tray of food that was in the floor.

After petitioner finished eating, he emptied his tray at the trash and started walking towards the exit and noticed the Assistant Manager Ivonne Silva walking in his direction. The veteran and the Assistant Manager bumped shoulders to each others, and petitioner kept walking to the Bus Terminal, and the Assistant Manager kept walking to employee-only-section.

The Store Manager, Ms. Castillo came running out of the store, through the parking-lot and up on the walkway of the bridge that joins the Eastride Bus Terminal with the Walmart-McDonald's Restaurant, shouting:
        "Sir, you can not come back into my store anymore."
Petitioner said "Why"? The Store Manager said, "You hit one of my employees". Petitioner said, "I did not hit your em-

ployee". The Store Manager said, "Yes You Did Because I Seen You On The Camera". Petitioner said, "We Bumped Into Each Other". The Store Manager said, "You Hit Her With Your Shoulder". Petitioner said, "We accidently bumped into each other, but did "she" say I hit "her"? The Store Manager said "no, but I seen it from the camera".

By the time this conversation ended between the veteran and the McDonald's Store Manager, petitioner had walked the Store Manager from the bridge back into the McDonald's Restaurant, through the parking lot. The veteran stated, "Ms. I am sorry if you think that I hit your employee, but the incident will not happen again". she said no, and called 9-1-1 emergency police.

When police arrived at McDonald's located inside the Walmart store, it was two police officers. One officer spoke with the store Manager about 20 feet away while the other officer spoke with the veteran. Petitioner told the officer before him that the Store Manager allowed the janitor to keep bring his food-order from mopping the floor, emptying the trash cans, cleaning the tables, cleaning soda-machine and ice-machine, and without washing her hands (a female janitor).

After police officers heard both sides of the story, they Ordered the veteran not to return inside McDonald's Restaurant unless he had written authorization, but said petitioner was allowed

continued free access to the Walmart store in it's self. The veteran feared for his immediate health, safety, and welfare.

See attached El Paso Police Report Number OCA 17-233113 dated August 21, 2017. It states,

"Officers J. P. Valles #2165 and S. Dominguez #3132 working as 1F194, were dispatched to 7101 Gateway west (McDonald's inside Walmart) reference to an assault in progress type of call. Upon arrival the officers met with the reporter (store manager), who advised the officers that one of her employees had just been assaulted by the offender. The reporter stated that the victim was passing by and holding a tray, when the offender was walking towards the victim. The reporter stated that the offender struck the victim on her shoulder with the offender's shoulder, making her drop the tray she was holding. The victim advised the officers that she did not feel pain and prosecution was not desired against the offender. The reporter advised the officers that it has been an ongoing issue, the offender enters the business and becomes verbally aggressive towards the staff. The reporter advised the officers that the offender is no longer welcome inside the business. The officers requested the reporter to approach the scene and criminally trespass the offender, which she did in the presence of the officers. The offender advised the officers that

he understood. The officers advised the offender of the conse-
quences of returning to the address of occurrence and checked
the offender for warrants at which time the offender checked
clear. The offender was advised and sent on his way. The re-
porter was issued an incident information card and advised
accordingly.

This court must note that the veteran asked both, the responding
police officers to the McDonald's incident along with the Store Manager,
where do he go for administrative appeal. They both, Police Officers
and the Store Manager said;

McDonald's Restaurant

Castro Enterprises

3332 Wedgwood Street

El Paso, Texas

See attached Administrative Appeal made by petitioner per-
taining to McDonald's Restaurant in this petition, dated August 28, 2017;
And to this date, McDonald's Restaurant - Castro Enterprises at neither
of the four (4) locations shown in the Administrative Appeal has re-
sponded.

Petitioner, the veteran argues that two (2) of the defendants in this
case, Walmart Store and McDonald's Restaurant frequently served his
foods from their hands carrying bacteria, thereby contaminating

the foods over a three (3) year period. That such bacteria entered through the mouth and worked it's way into the veteran eyes, causing petitioner to seek emergency medical treatment at the University Medical Center in El Paso, Texas along with Texas Tech University Medical Center in El Paso, Texas for bacteria gaining access inside his eyes, through his mouth, and he fears for his immediate health, safety, and welfare.

Footnote: See Attached U.S. Veteran Identification Card colored copied, and petitioner's social security card-colored copied.

Bacteria is a member of a large group of unicellular microorganisms which have cell walls but lack organelles and an organized nucleus, including some which can cause disease. Synonyms; illness, ailment, infection, disease, disorder, sickness, and more. Most bacteria multiply by a process called binary fission. A single bacterial cell, the "parent," makes a copy of its DNA and grows large in size by doubling its cellular content. The doubled contents are pushed out either end of the cell. Then a small fissure emerges at the center of the parent, eventually splitting it into two identical "daughter" cells.

Antibiotic resistance is a phenomenon where infectious bacteria are no longer susceptible to previously effective antibiotics. This court should note that the August 28, 2017 Administrative Appeal by petitioner, sent to Robert Castro - President of Castro Enterprises, Inc. regarding the McDonald's Restaurant that the store Manager and Police Officers claimed owned the Restaurant inside Walmart Department Store, sent the veteran to 3832 Wedgewood Street, El Paso, Texas on appeal; Written appeal

reads as follows;

   "Dear Mr. Castro,

August 21, 2017, as a regular customer, I entered one of your

McDonalds Restaurants located in Walmart shopping center at 7101

Gateway Blvd., West, El Paso, Texas. An employee working as a ja-

nitor, served me the meal without washing her hands or having on

gloves. Previously, I had pleaded with managers and staff at this

McDonald's location on several occassions, not to allow the

person acting as the janitor who is mopping floors, emptying

trash cans, and cleaning machines such as soda and ice ma-

chines, not to deliver my food to the table; As they claim policy

resently requires them to bring customers In-To-Eat, their food.

   The person claiming to be Store Manager had faithfully pro-

mised me more than once that she would not allow this to

happen. Staff at the Cash Registered assured me this would

not happen again. It happen for the seventh (7th) time on

August 21, 2017, and I bumped into one of the under-managers,

and the tray of food attempt to serve me by the janitor was

Knocked of the floor.

   The Store Manager replaced the tray of food that was

Knocked to the floor, but called police regarding me bumped

into the other staff member. When police arrived, store Manager

showed the videos in her cell-phone which she had recorded

from your servelience camera, and requested that I be

permanently expelled. The police officer followed the

Store Manager request, but said that I needed a letter in writing which would authorize me to return in the store without restrictions.

I have been in contact with an attorney concerning this matter, but thought you might would investigate and eliminate me being expelled, so that I can peaceably eat at McDonald's Restaurant, without the burden of extraordinary cost and humiliation.

The same day of the incident, August 21, 2017, I went to a McDonald's Administrative Office located at 3332 Wedgewood Street in El Paso, Texas in search for an Administrative Supervisor. Mr. Joe Lopez said that Ms. Angie Silva was the person in charge over there; But to this end, she, Angie Silva has not been able to be reached.

At your earliest time possible, please send me a breif letter regarding this complaint, and allow me normal service at McDonald's Restaurant located in Walmart Shopping Center at 7101 Gateway Blvd. West, in El Paso, Texas 79925.

Your kindness in this matter is being embraced with gratitude profound.

Respectfully Yours,

cc: Robert Castro - President, Castro Enterprises

330 Bartlett Drive, El Paso, Tx 79912

(2) Robert Castro - President, Castro Enterprise

12953 Golden Sun Drive, El Paso, Tx. 79938

(3) Robert Castro - President, Castro Enterprises

745 Kapriz Avenue

El Paso, Tx. 79932

HADI ABDUL HAQQ

United States Veteran

306 E. Paisano Drive

PMB# 215

El Paso, Texas 79901

"

cc: p/f

Bacteria is a very large group of microorganisms comprising one of the three domains of living organisms. They are prokaryotic, unicellular, and either free-living in soil or water or parasites of plants or animals. Microorganism is an organism that can be seen only with the aid of a microscope. Microorganisms includes bacteria, protozoans, algae, and fungi; found in rotting matter, in air, in soil and in living bodies, some being the germs of disease.

Bacteria can use most organic and some inorganic compounds as food and some can survive extreme conditions. Pili Bacteria is hair-like appendages on the outside of the cell allow it to stick to surfaces and transfer genetic material to other cells. This can contribute to the spread

of illness in humans.

Anaerobes, or anaerobic bacteria, can only grow where there is no oxygen. In humans, this is mostly in the gastrointestinal tract. They can also cause gas, gangrene, tetanus, botulism, and most dental infections.

Facultative anaerobes, or facultative anaerobic bacteria, can live either with or without oxygen. They are mostly found in soil, water, vegetation, and some normal flora of humans and animals.

Mesophiles, or mesophilic bacteria, are the bacteria responsible for most human infections. They thrive in moderate temperatures, around 37°C. This is the temperature of the human body. Cells acquire new genetic material through processes known as conjugation, transformation, or transduction. These processes can make bacteria stronger and more able to resist threats, such as antibiotic medication. Some types of bacteria can cause diseases in humans, such as cholera, diptheria, dysentery, bubonic, pneumonia, tuberculosis, typhoid, and many more.

If the human body is exposed to bacteria that the body does not recognize as helpful, the immune system will attack them. This reaction can lead to disabilities. Scientist and health authorities are calling on doctors not to prescribe antibiotics unless it is necessary, and people to practice other ways of preventing disease, such as good food hygiene, hand washing, vaccination, and using condoms.

This petitioner argues that the defendants, all three (3) of them, willfully, knowingly, and deliberty contaminated the veterans cooked foods with bacteria on daily basis, and for nearly four (4) years. Such contamination caused the petitioner emergency medical treatment, and has resulted in permanent injury.

Sometime about three years prior to this date, petitioner went to the Emergency Room at University Medical Center in El Paso, Texas advising doctors that bacteria lives in the water of his eyes; That the bacteria scatches the veterans eyes, bite the inside eye-lids, blocks the vision from clearity and hide from eye-drops behind the eye-ball and above the the eye-ball. The veteran told the doctors that the cause of the bacteria was unsanitary employees selling petitioner contaminated foods.

Emergency doctors used a microscope-light to see the bacteria living in petitioner eyes, then prescribed the veteran "Flonase", and referred the petitioner to Texas Tech Medical Center, in El Paso, Texas. Flonase is a nasal spray that has an active ingredient called Fluticasone Propionate. It is a synthetic corticosteroid. The chemical Fluticasone Propionate is white in color. Flonase nasal spray also contains microcrystalline cellulose and carboxymethylcellulose sodium, dextrose, 0.02% w/w benzalkonium choride, polysorbate 80, and 0.25% w/w phenylethyl alcohol, and has a pH between 5 and 7.

The Flonase drug was prescribed for a period of thirty (30) days.

Flonase Nasal Spray is a prescription medicine used to treat non-allergy nasal symptoms such as runny nose, stuffy nose, sneezing, nasal itching, and irritated watery eyes.

Using as directed, the flonase cleared petitioner eyes after thirty (30) day use; But the defendants continued contaminating the foods, and the bacteria returned and stayed. Ms. Asmik Asatrian, M.D. was the veteran physician at Texas Tech Medical Center in El Paso, Texas. Petitioner advised this physician that bacteria was living in the water of his eyes do to contaminated foods by store employees. Asatrian, M.D. ordered visine with instructions to meet the Ophthalmologist at the Texas Tech Medical Center in El Paso; For petitioner to do so.

Petitioner met with female and male Ophthalmologist at the Texas Tech Ophthalmologist Clinic. The female ophthalmologist instructed petitioner; after the veteran told her that bacteria was living in the water of his eyes, and using the various eye-drops only make the bacteria go to the back of the eye-ball or above the eye-ball, but then they come back out. She then used a microscope-light to see the bacteria and prescribed claritan, plus eye-drops.

Petitioner returned to the Ophthalmologist clinic, and after examination of the veteran eyes, the male Ophthalmologist said that he would send the petitioner to a specialist, but only treated the veteran for "Glaucoma".

※ Petitioner, the veteran argues that the Walmart Department Store have seny him By Trick, then returned the money back to petitioner. The veteran went to Walmart Department Store named in this lawsuit in early March of 2019 grocery shopping, having been treated cruel and unual at the Deli Department, but then, while at the Check-Out-Register, the sales clerk quickly charged petitioner for his Order. When petitioner looked over his sales receipt, he noticed that although he had only ordered one (1) single bread-roll, the sales clerk had charged him for thirteen (13). Petitioner took his receipt along with the groceries to Ms. Audrey, who is or was a Customer Service Representive at the Walmart Store. Ms. Audrey went to the sales clerk and asked if petitioner had ordered one (1) bread-roll or thirteen (13) bread-rolls. The sales clerk said only one (1), and the Customer Service Representative gave petitioner back the difference for the extra twelve rolls, with the assistance of Ms. Jacqualine, who is or was a Customer Service Manager.

Robbery requires that the property be taken directly from the person of the victim or from their presence. This is different from larceny which simply requires that property be taken from the victim's possession, actual or constructive. Property is "on the victim's person" if the victim is actually holding the property, or the property is contained within clothing the victim is wearing or is attached to a victim's body such as a watch or earrings. Robbery charges by trick include that which took place because of a deception perpetrated by the person that illegally obtained posses-

sion of property. Robbery By Trick can occur even when the victim intends to turn over possession rights of said property. Trick is a crafty or underhanded device, maneuver, stratagem, or the like, intended to deceive or cheat.

Larceny by trick was created to punish the taking of property with the owner's consent when that consent was obtained by Fraud or Deceit. Before the courts created the offense of larceny by trick, defendants who had swindled their victims were able to argue that they had not committed larceny because the victims had willfully given them property.

Massachusetts is one state that has retained its larceny statutes. The general larceny statute in Massachusettes combines the crime of embezzlement with larceny. Under this statute anyone who

steals, or with intent to defraud obtains by a false pretense, or whoever unlawfully, and with intent to steal or embezzle, converts, or secretes with intent to convert, the property of another . . . whether such property is or is not in his possession at the time of such conversion or secreting, shall be guilty of larceny . . . (Mass. Gen. Laws Ann. ch 266, § 30(1).

(4) Whoever steals, or with intent to defraud obtains by a false pretense, or whoever unlawfully, and with intent to steal or embezzle, converts, secretes, unlawfully

taker, carries away, conceal or copies with intent to convert

any trade secret of another, regardless of value, whether such

trade secret is or is not in his possession at the time of such

conversion or secreting, shall be guilty of larceny, and shall be

punished by imprisonment in the state prison for not more

than five years, or by a fine of not more than twenty-five

thousand dollars and imprisonment in jail for not more than

two years.

Defendant McDonald's Restaurant named in this lawsuit has committed

Bribery. At page 65 of this lawsuit, petitioner argues that the Store Manager

told him;

"I will get you a new tray of food if you agree to take your

food-order outside of McDonald's Restaurant into a

McDonald's Eating Room next to the Walmart bathrooms".

Bribery is the offering, giving, receiving, or soliciting of something of value

for the purpose of influencing the action of an official person in the discharge of

his or her public or legal rights and duties. See 18 U.S. Csi. pra § 201(b),

whoever directly or indirectly, corruptly gives, offers, or promises any

thing of value to any public official with intent to influence that person's

official act, is guilty of bribery. The punishment prescribed by the statute

is a fine of an amount not more than three times the monetary equivalent

of the thing of value, or imprisonment for not more than fifteen years, or

both. Additionally he/she can be disqualified from hold any office of

honor, trust, or profit under the Government. See Smith v. Pure Oil Co., 278 Ky. 430, 434 (Ky. 1939) argued by petitioner at pages 53 and page 54 of this lawsuit.

McDonald's Restaurant has willfully, knowingly and deliberty violated petitioner's rights as cited under the Fourteenth (14th) Amendment to the United States Constitution. We hold;

All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of United States; nor shall any state deprive any person within it's jurisdiction the equal protection of the laws.

Section 5 of the Fourteenth Amendment to the United States Constitution gives Congress the authority to enforce the Fourteenth Amendment through legislation. Congress used their authority during reconstruction to enact laws that sought to curtail vigilantism and misconduct by Southern state and local government officials. These laws which provided both criminal and civil penalties, fell into disuse doing the 1880's, but were revived in the 1960's. The Supreme Court, in a series of rulings, gave individuals the right to sue local government officials (anywhere in the United States, not just in the South) for damages for violations of their civil rights.

The McDonald's Restaurant named in this lawsuit is and was at all

times mentioned in this lawsuit, violated petitioner's rights as cited under the Fifth (5th) Amendment to the United States Constitution. It hold;

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases in the land or naval forces, or in the Militia, when in actual service time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

The constitution guarantee of equal protection of the laws means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty, property, and in their pursuit of happiness. See People vs. Jacob. 27 Cal. App. 3d 246, 103 Cal. Rptr. 536, 543; 14th Amend., U.S. Const. Doctrine simply means that similarly situated persons must receive similar treatment under the law. See Dorsey vs. Solomon, D.C. Md., 435 F.Supp. 725, 733.

Petitioner was a customer at the McDonald's Restaurant named in this lawsuit. A customer is one who regularly or repeatedly makes purchases of, or has buisness dealing with, a trademan or buisness;

See Aiken Mills. vs. United States, D. C. S. C., 53 F. Supp. 584; Arkwright Corporation vs. United States, D. C. Mass., 53 F. Supp. 357, 361.

This court reviews pro se pleadings under a less stringent standard than those drafted by attorneys, and such pleadings are entitled to liberal construction that includes all reasonable inferences that can be drawn from them. See Haines vs. Kerner, 404 U.S. 519, 520-21 (1972) (explaining the lower standard for pro se pleadings). At the same time, however, parties proceeding pro se are still required to provide sufficient facts in support of their claims. See United States vs. Pineda, 988 F. 2d 22, 23 (5th Cir. 1993).

Petitioner argues that the defendant McDonald's Restaurant named in this lawsuit during all times mentioned, has willfully, knowingly, and deliberately committed "Fraud". Fraud is an intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right. A false representation of a matter of fact, whether by words or by conduct, by false or misleading allegations, or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury. Anything calculated to deceive, whether by a single act or combination, or by suppression or truth, or suggestion of what is false, whether it be by direct falsehood or innuendo, by speech or silence, word of mouth or look or gesture.

A generic term, embracing all multifarious means which human

ingenuity can devise, and which are resorted to by one individual to get advantage over another by false suggestions or by suppression of truth, and includes all suprises, tricks, cunning, dissembling, and unfair way by which another is cheated.

Elements of a cause of action for "fraud" include false representation of a present or past fact made by defendant, action in reliance thereupon by plaintiff, and damage resulting to plaintiff from such misrepresentation; See Johnson vs. McDonald, 170 Okt 117, 39 P.2d 150; [2014];

Before Moore, O'Malley, and Chen, Circuit Judges. Kenneth M. Carpenter, Chartered, of Topeka, KS, argued for claimant-appellant. Martin F. Hockey, Jr. Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, D.C., argued for respondent-appellee. With him on the brief Stuart F. Delery, Assistant Attorney General, and Bryant G. Snee, Acting Director, of counsel on the brief were David J. Barrans, Deputy Assistant General of Counsel, and Martie Adelman, Attorney, United States Department of Veterans Affairs, of Washington, D.C. Marvin O. Johnson appeals from the decision of the Court of Appeals for Veterans Claims (Veteran Court) denying his request for referral for extra-schedular consideration of his service-connected disabilities. Because the Veterans Court's in-terpretation of 38 C.F.R. § 3-321(b)(1), which governs referral for extra-schedular consideration, contravenes the plain meaning of

the regulation, we reverse and remand.

McDonald's administrative employees (managers) committed Negligence Per se. It is a form of negligence that results from violation of a statute. Conduct, whether of action or omission, which may be declared and treated as negligence without any argument of proof as to the particular circumstances, either because it is in violation of a specific statute or valid municipal ordinance, or because it is so palpably opposed to the dictates of common prudence that it can be said without hesitation or doubt that no careful person would have been guilty. As a general rule, the violation of a public duty, enjoined by law for the protection of person or property, so constitutes. Seim v. Garavalia, Minn., 306 N.W.2d 806, 810 (1981). Sheran, chief Justice held;

> This case arises from a dog bite inflicted upon the minor plaintiff by defendant's dog on May 2, 1979. The incident occured after plaintiff Shannon Marie Seim, two days from her seventh birthday, called upon defendant's six-year old son Scott. Tied to a tree in the backyard was defendant's dog, Hollow. The dog was friendly and had no history of growling or snapping at members of the defendant's family or at stangers. Hollow had just received some table scraps when the two children entered the yard. Encountering Hollow, Shannon decided to pet him and asked Scott if he bit. Although Scott said "no", Shannon asked him to pet Hollow first. Scott, who was standing to the right of the dog, petted him, at which time Hollow barked. Shannon, who was standing in front of the dog, then petted him on top of his head.

When she did so, Hollow jumped up, knocked her down, and bit her in the face. The wound caused several severe lacerations in her cheek and near her lower lip. Stitches were needed to close the wound and medical records indicate that the scarring will be permanent. Medical expenses totaled $325.50, but two doctors recommended plastic surgery in the future, which would require the expenditure of an additional $2,300.

Plaintiff subsequently initiated an action based upon the provisions of Minn. Stat. § 347.22 (1980). This statute states that: "If a dog, without provocation, attacks or

injures any person who is peaceably con-
ducting himself in any place where he may
lawfully be, the owner of the dog is liable in
damages to the person so attacked or in-
jured to the full amount of the injury sus-
tained.

At trial, defendant was permitted to raise the affirmative defenses of contributory negligence and assumption of risk. At the close evidence, District Court Judge Thomas G. Forssberg set plaintiffs' special damages at $325.50 and directed a verdict in favor of plaintiffs on the issue of statutory liability. However, the judge submitted the question of the minor plaintiff's contributory *209 negligence to the jury. The jury returned a verdict apportioning 50% of the negligence to the minor plaintiff and 50% to the defendant.

Damages were set at #2,000. Plaintiff appeal from the #1,162.75 judgment entered in their favor. [2] We reverse and remand this case to the district court with directions to restore the full verdict of #2,325.50. In addition, we confer the district court with jurisdiction to entertain a motion for a new trial on the issue of damages.

McDonald's Restaurant in this lawsuit is in violation of petitioner rights as cited under the Eighth (8th) amendment to the United States Constitution;

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.

Petitioner argues that defendant McDonald's Restaurant has committed "Passive Negligence" in the above captioned matter before this court. It is negligence which permits defects, obstacles, or pitfalls to exist on premises; that is, negligence which causes dangers arising from physical condition of land. They, defendant McDonald's Restaurant is guilty of "Subsequent Negligence" in this matter before the court.

Subsequent Negligence exist where defendant see plaintiff in a position of danger and fails to exercise due and proper precaution to prevent injury to plaintiff. See Holman v. Brady, 241 Ala. 487, 3So. 2d 30, 33, argued at page 46 and page 47 of this lawsuit by petitioner.

Petitioner argues in this lawsuit that McDonald's Restaurant named is

this lawsuit, using it's agents, employees, and subordinates, is or was operating in-side the unlawful acts of "conspiracy". Conspiracy is a combination or confederacy between two or more persons formed for the purpose of committing, by their joint efforts, some unlawful or criminal act, or some act which is lawful in itself, but becomes unlawful when done by the concerted action of the conspira-tors, or for the purpose of using criminal or unlawful means to the commission of an act not in it self unlawful.

A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating it's com-mission he; (1)agrees with such other person or persons that they, or one or more of them will engage in conduct which constitute such crime or an attempt or solicitation to commit such crime; or (b)agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime. See Model Penal Code § 5.03.

A conspiracy may be a continuing one; actors may drop out, and others drop in; the details of operation may change from time to time; the members need not know each other or the part played by others; a member need not know all the details of the plan or the operation; he must, however, know the purpose of the conspiracy and agree to become a party to a plan to effectuate that purpose. See Craig vs. U.S. C.A. Cal., 81 F.2d 816, 822; Before Garrecht, Denman, and Haney, Circuit Judges;

On December 19, 1934, an indictment was returned in the court below against the appellants and Helen Werner. This accusation, which will be hereinafter referred to as the first indictment, contained two counts, each charging a violation of 18 U.S.C.A. § 88. The first count alleged that the defendants had conspired to secure, by corrupt means, dismissal of an indictment and prosecution in which John McKeon and others were charged with violations of 18 U.S.C.A. § 338, or using mails in execution of scheme to defraud, and with a violation of 18 U.S.C.A. § 88, the conspiracy statute. The judgment of conviction in the prosecution under the postal laws, hereinafter referred to as the Itala case, was reversed by this court in a decision handed down on November 8, 1935. Wilkes vs. United States, 80 F. 2d 285.

There are twenty-five assignments of error. Each of these assignments is listed as a "specification" in the appellants main brief, and it is asserted that each relied upon as pointing out prejudicial error. We have here discussed, however, only those assignments that are argued in the briefs.

As to the others, we might well have felt at liberty to disregard the points thereby raised. See Forno v. Coyle (C.C.A.9) 75 F. 2d 692, 695, and cases there cited. Nevertheless, we have examined all the other assignments, and

have found them to be without merit.

Accordingly, the judgment of the lower court is affirmed, as to each appellant.

Judgment affirmed.

Petitioner argues in this lawsuit that all three (3) defendants, that is Walmart Department Store, McDonald's Restaurant, and Walmart stores Incorporated is guilty of Deformation of his Character. Individually, the defendants charged the veteran with assault during the Walmart Incident on March 31, 2019, and charged the veteran with assault during the McDonald's Incident on August 21, 2017; And as a result, petitioner was expelled from both, Walmart and McDonald's stores.

A plaintiff in a deformation of character situation must prove that the defendant(s) made a false and defamatory statement about the plaintiff, made the statement in way that others saw, heard or read it, and that the plaintiff suffered harm as a result of the statement. See Model Penal Code §§ 2.06(2)(a). [cases: Criminal Law-Key 59(4).];

"A person who action on behalf of a principal is unlawful but does not merit prosecution because the agent had no Knowledge of the principle's illegal purpose; a person who lacks the mens rea for an offense but who tricked or coerced by into com-

-mitting a crime. Although the agent's conduct was unlawful, the agent might not be prosecuted if the agent had no Knowledge of the principal's illegal purpose. The principal is legally account-table for the innocent agent's action.

Ms. Ana is a librarian at the Main Library in El Paso, Texas, she is between the age of 60 and 70 years old. During the past one or two years, Ms. Ana has been helping petitioner to order-purchase the "Flonase" medication through the Internet On-Line.

Walmart Stores Incorporated is the chief operator of each Walmart Department Store in the United States, including the Walmart Department Store located 7101 Gateway Blvd. West, El Paso, Texas. The Walmart Company Headquarters is and was responsible for the overall corrections and cu-stomer Services at each Department store, including it's smaller retail stores. They was to see to it that their administrative store Managers re-solved each appeal, whether appeal be written or Oral, and Kept all customers out of immediate fear of their health, safety, and welfare, including the petitioner.

The Walmart Company was to assure each registered customer that he or she would not be threatened by staff members arising out of disagreement of service, or expelled from the Department store by police, which was caused by managers and staff, including petitioner. The Walmart Stores Incorporated defendant, made available bacteria

used to contaminate petitioner's cooked foods at the Walmart Department Store named in this lawsuit, including at the McDonald's Restaurant herein. All three (3) defendants named in this lawsuit, Walmart Department Store, McDonald's Restaurant, and Walmart Stores Incorporated is and has corrupted the lawful process of petitioner as a customer.

> "Corruption is an act done with an intent to give some advantage inconsistent with official duties and rights of others. It is the act of an official or fiduciary person who unlawfully and wrongfully uses his station or character to procure some benefit for himself or for another person, contrary to the duty and rights of others."

While the female Ophthalmologist at Texas Tech Medical Center in El Paso, Texas directed petitioner to use the "Claritan" one time each day and to use the eye-drops twice each day in an effort to eliminate the bacteria within 30 days; But in thirty days, petitioner returned to the female Ophthalmologist and advised her that he was allergic to the "Claritan", and that the bacteria continued living in the water of his eyes. The female Ophthalmologist changed petitioner's medication from "Claritan and one kind of eye-drops" to two (2) kinds of eye-drops", to be used at least twice a day and as needed. After using the over-counter non-prescription necessary eye-drops for a period of four (4) months and the bacteria was still in petitioner's eyes, petitioner consulted with a pharmacist at CVS store in downtown El Paso, Texas about returning to the use of "Flonase", which he sold over-the-counter as a non-prescription drug.

The pharmacist said although he recogniz "Steroid" as being one of the active ingredients in the drug "Flonase", but that such particular steriod would not harm petitioner unless continued over a very long period of time and on, daily basis.

See El Paso Police Report Number OCA 19-090098 for Walmart store dated 3/31/2019. When police arrived, petitioner told officer Holmes that the Walmart store Employee name Rodriguez had threatened to hit petitioner during the 3/31/2019 incident at Walmart store, using the bag of fish as the weapon. The police officer never charged Mr. Rodriguez, but rather, secretly amitted this portion of the incident from the Police Incident Report dated 3/31/2019.

Petitioner argues that he is a United States Veteran of the District of Columbia National Guard, under the U.S. Department of Defense. During World War I, 1914, the Bureau of War Risk Insurance was created under the War Risk Insurance Act. The bureau administered insurance against death or disability of members of the armed forces. The act also set-up the Federal Bureau for Vocational Educational to provide vocational reha- bilitation for disabled veterans. Five government agencies were then serving veterans. To eliminate the duplication, the United States Congress created the Veteran Bureau in 1920. In 1930, the Veteran Administration was created by combining the Veterans Bureau with the National Home for Disabled Volunteer Soldiers and the Bureau of Pensions.

In 1988, the United States Congress passed a bill that made the Veterans Administration an executive department of the United States government. The bill renamed the Veteran Administration to the Department of Veterans Affairs. The change went into effect in March of 1989, and placed under the administration of President Herbert Walker Bush.

Veterans Day honor men and women who served in the United States Armed Services. Veterans Day is a legal federal holiday in the United States. In 1919, President Woodrow Wilson proclaimed November 11 as Amistic Day to remind Americans of the tragedies of war. A 1938 law made the day a federal holiday. In 1954, the United States Congress changed the holiday's name to Veterans Day to honor all United States Veterans, including the petitioner in this lawsuit.

Walmart Stores Incorporated as a defendant named in this lawsuit is and was violating petitioner's rights as cited under the Fifth (5th) Eighth (8th), Ninth (9th), and Fourteenth (14th) amendments to the United States Constitution, and in the unlawful process, this defendant has committed the high crimes of Fraud and Conspiracy, and petitioner feared, and still fears for his immediate health, safety, and welfare.

Walmart Stores Incorporated, using it's agents, employees, and subordinates, is and was during all times mentioned in this lawsuit, organized a continuous operation of conspiracy. Conspiracy is a combination or confederacy between two or more persons formed for the purpose of committing, by

their joint efforts, some unlawful or criminal act, or some act which is lawful in itself, but becomes unlawful when done by the concerted action of the conspirators, or for the purpose of using criminal or unlawful means to the commission of an act not in itself unlawful.

A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating it's commission he; (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitute such crime or an attempt or solicitation to commit such crime, or (b) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime. See Model Penal Code §5.03.

A conspiracy may be a continuing one; actors may drop out, and others drop in; the details of operation may change from time to time; the members need not know each other or the part played by others; a member need not know all the details of the plan or the operation; he must, however, know the purpose of the conspiracy and agree to become a party to a plan to effectuate that purpose. See Craig vs. U.S., C.C.A. Cal., 81 F. 2d 816, 822; Before, Garrecht, Denman, and Haney, Circuit Judges;

On December 19, 1934, an indictment was returned in the court below against the appellants and Helen Werner. This accusation, which will be hereinafter referred to as the first indictment, contained two counts, each charging a violation of 18 U.S.C.A. §§ 88.

The first count alleged that the defendant had conspired to secure, by corrupt means, dismissal of an indictment and prosecution in which John McKeon and other were charged with violations of 18 U.S.C.A. § 338, or using mails in execution of scheme to defraud, and with a violation of 18 U.S.C.A. § 88, the conspiracy statute. The judgment of conviction in the prosecution under the postal laws, hereinafter referred to as the Italo case, was reversed by this court in a decision handed down on November 8, 1935. Wilkes vs. United States, 80 F. 2d 285.

There are twenty-five assignments of error. Each of these assignments is listed as a "specification" in the appellants main brief, and it is asserted that each relied upon as pointing out prejudicial error. We have here discussed, however, only those assignments that are argued in the briefs.

As to the others, we might well have felt at liberty to disregard the points thereby raised. See Forno v. Coyle (C.C.A.) 75 F. 2d 692, 695, and cases there cited. Nevertheless, we have examined all the other assignments, and have found them to be without merit.

Footnote: Ms. Aide Gonzales is or was petitioner's social worker at the Opportunity Center—Shelter for the Homeless in El Paso, Texas. She gained him medical treatment for his eyes at University Vision Center, and lens cutters as well.

Accordingly, the judgment of the lower court is affirmed, as to each appellant.

Judgment affirmed.

Petitioner remained in immediate fear of his health, safety and welfare by defendant Walmart store Incorporated. Immediate can best be defined as "relating to or existing at the present time". Another term for immediate is "that which is produced directly by the act to which it is ascribed, without the intervention or agency of any distinct intermediate cause".

Petitioner argues that when an immediate injury is caused by negligence, the injured party may elect to regard the negligence as the immediate cause of action, and declare in case; or to consider the act itself as the immediate injury, and sue in trespass; See 14 John. 432; 6 Cowen, 342; 3 N.H. Rep. 465; 2 Bos. & Pull.

Walmart Stores Incorporated is and was in violation of petitioner rights as cited under the Fourteenth (14th) Amendment to the U.S. Constitution; We hold;

All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person within it's jurisdiction the equal protection of the laws.

R. 96
-of-
138

Section 5 of the Fourteenth Amendment to the United States Constitution gives Congress the authority to enforce the Fourteenth Amendment through legislation. Congress used their authority during reconstruction to enact laws that sought to curtail vigilantism and misconduct by Southern state and local government officials. These laws which provided both criminal and civil penalties, fell into disuse doing the 1880's, but were revived in the 1960's. The Supreme Court, in a series of rulings, gave individuals the right to sue local government officials (anywhere in the United States, not just in the south) for damages for violations of their civil rights.

The constitution guarantee of equal protection of the laws means that no person or class of person shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty, property, and in their pursuit of happiness. See People v. Jacob. 27 Cal. App. 3d 846, 103 Cal. Rptr. 536, 543; 14th Amend., U.S. Const. Doctrine simply means that similar situated persons must receive similar treatment under the law. See Dorsey v. Soloman, D.S. Md., 435 F. Supp. 725, 733.

Petitioner argues that defendant Walmart Stores Incorporated named in this lawsuit has willfully, knowingly, and deliberty committed "fraud". Fraud is an intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right. A false representation of a matter of fact, whether by words or by conduct, by false or misleading allegations, or by concealment of that

which should have been disclosed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury. Anything calculated to deceive, whether by a single act or combination, or by suppression or truth, or suggestion of what is false, whether it be by direct falsehood or innuendo, by speech or silence, word of mouth or look or gesture.

A generic term, embracing all multifarious means which human ingenuity can devise, and which are resorted to by one individual to get advantage over another by false suggestions or by suppression of truth, and includes all suprises, tricks, cunning, dissembling, and unfair way by which another is cheated.

Elements of a cause of action for "fraud" include false representation of a present or past fact made by defendant, action in reliance thereupon by plaintiff, and damage resulting to plaintiff from such misrepresentation. See Johnson v. McDonald, 170 Okl. 117, 39 P. 2d 150; [2014].

Before Moore, O'Malley, and Chen, Ciruit Judges. Kenneth M. Carpenter, Chartered, of Topeka, KS, argued for claimant-appellant. Martin F. Hockey, Jr. Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, D.C., argued for respondent-appellee. With him on the brief Stuart F. Delery, Assistant Attorney General, and Bryant G. Snee, Acting Director, of counsel on the brief were David J. Barrow, Deputy Assistant General of Counsel, and Martie Adelman, Attorney, United States Department of Veterans Affairs, of Washington, D.C. Marvin O. Johnson appeals from the decision of the Court of Appeals for

veterans claims (Veterans Court) denying his request for referral for extra-schedule consideration of his service-connected disabilities. Because the Veterans Court's interpretation of 38 C.F.R. § 3-321(b)(1), which governs referral for extra-schedular consideration, contravenes the plain meaning of the regulation, we reverse and remand.

The Walmart Stores Incorporated defendant is and was committed Negligence Prose. It is a form of negligence that results from violation of a statute. Conduct, whether of action or omission, which may be declared and treated as negligence without any argument of proof as to the particular circumstances, either because it is in violation of a specific statute or valid municipal ordinance, or because it is so palpably opposed to the dictates of common prudence that it can be said without hesitation or doubt that no careful person would have been guilty. As a general rule, the violation of a public duty, enjoined by law for the protection of person or property, so constitutes. Seim v. Garavalia, Minn. 306 N.W. 2d 806, 810 (1981). Sheran, Chief Justice held;

This case arises from a dog bite inflicted upon the minor plaintiff by defendant's dog on May 2, 1979. The incident occurred after plaintiff Shannon Marie Seim, two days from her seventh birthday, called upon defendant's six-year old son Scott. Tied to a tree in the backyard was defendant's dog Hollow. The dog was friendly and had no history of growling or snapping at members of defendant's family or at strangers. Hollow had just received some table scraps

when the two children entered the yard. Encountering Hollow, Shannon decided to pet him and asked Scott if he bit. Although Scott said "no", Shannon asked him to pet Hollow first. Scott, who was standing to the right of the dog, petted him, at which time Hollow barked. Shannon, who was standing in front of the dog, then petted him on top of his head. When she did so, Hollow jumped up, knocked her down, and bit her in the face. The wound caused several severe lacerations in her cheek and near her lower lip. Stitches were needed to close the wound and medical records indicate that the scarring will be permanent. Medical expenses totalled $325.50, but two doctors recommended plastic surgery in the future, which would require the expenditure of an additional $2,300.

Plaintiff subsequently initiated an action based upon the provision of Minn. Stat. §§ 347.22 (1980). This statute states that:
"If a dog, without provocation, attack or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained.

At trial, defendant was permitted to raise the affirmative defense of contributory negligence and assumption of risk. At close evidence, District Court Judge Thomas G. Forsberg set plaintiff on special damages at $325.50 and directed a verdict in favor of plaintiff on the issue of statutory liability. However, the judge submitted the question of the minor

plaintiff's contributory * 209 negligence to the jury. The jury
returned a verdict apportioning 50% of the negligence to the
minor plaintiff and 50% to the defendant. Damages were set
at $2,000. Plaintiff appeal from the $1,162.75 judgment
enterred in their favor. [2] We reverse and remand the case
to the district court with directions to restore the full verdict
of $2,325.50. In addition, we confer the district court with
jurisdiction entertain a motion for a new trial on the issue
of damages.


Petitioner argues that defendant Walmart Stores Incorporated
maintains "aggressive" employment staff at Walmart Department
Store as well as the McDonald's Restaurant located at the border of
Mexico, in El Paso, Texas, named in this lawsuit; Not based on their
mixed Indian Race, but rather, their lack of exposure regarding ordinary
living. In the process of this aggressiveness, the defendant Walmart
Stores Incorporated is and was during all times mentioned in this law-
suit, violated petitioner's rights as cited under the Eighth (8th) Amend-
ment to the United States Constitution. The Eighth (8th) Amendment to
the United States Constitution holds;

Excessive bail shall not be required, nor excessive fines
imposed, nor cruel and unusual punishment inflicted.


Petitioner argues that the defendant Walmart Stores Incorporated

UNITED STATES VETERAN

Footnote: In June of the year 2019, Walmart Department Store officially modified the name of it's "Customer Service" department to be re-named as simply "Sevices" department, after the dates of incidents mentioned in this lawsuit, which would, for the purpose of this lawsuit, imply less of a legal duty in which the plaintiff counted on, during the whole time he appealed to the "Customer Service" department, now Known as "Services".

Footnote: The Bar should note that about 30 days after the March 31, 2019 El Paso Police dated incident report at Walmart attached hereto, Walmart appear's to have stop selling the "Talarpia Fish - Cooked Fried" as they did for at least three (3) years to petitioner, which indicate such cooked fish by the frying-unit could also been carrying bacteria from the waters or dry land, and employees gloves.

Footnote: The Bar must note that although "Unknown Agents and Unknown Officers" as just specified, are not defendant(s) to this lawsuit, during the past thirty (30) years plaintiff has been homeless-outside, they have been laising plaintiff's foods, medicines, and beverages with poisonings that severely weakens the teeth, other poisonings causes respiratory diffuculties, other poisonings causes severe diarea, other poisoning they-uses causes heart complications, other poisonings they-uses severely weakens the joints in the body, other poisonings they uses severely tightens leg muscles and arm muscles, other poisonings they uses causes minor siezures, other poisoning they-uses causes

UNITED STATES VETERAN

extremely high blood preassure, other poisonings they uses strip the bones of its calcium, other poisonings they uses prevent regular urination. They, Unknown Agents and/or Unknown Officers uncover plaintiff disabilities from lawsuits and hospital records, than uses other poisoning to enhance those disabilities and deformaties.

   The Unknown Agents and Unknown Officers send visual threats such as male and female reckless-motorist and violent groups walking. They keep roping plaintiff's female friends by using the females relatives and associates as the offenders, drug related. They keep whipping plaintiff's female friends and threatening these females with food poisonings to prevent a Joint Relationship Agreement. They threaten plaintiff's female friend who are not drug addict/dealers from accepting any kind of gift, money, or prize plaintiff may give to them; Or rob them of it.

has treated him cruel and unusual and that he still fears for his immediate health, safety, and welfare. As a result of that treatment, petitioner remains on medication for the contamination of his cooked foods sold to him under the Walmart stores Incorporated.

Miscarriage of Justice is warranting reversal, should be declared when the law, after examination of the entire case concluding the evidence of the opinion that it is reasonably possible that a result more favorable to appealing party would have been reached in absence of the error; See People vs. Bernhard, 222 C.A.2d 567, 35 Cal. Rptr. 401, 418.

By indictment the defendants Julius Bernhardt, Vivienne Dunham and William E. Lund were accused of two crimes. In count I it was charged that they had committed the crime of conspiracy to violate section 2141 of the Business and Professions Code. In count II they were alleged to have committed the crime of manslaughter (Pen. Code, § 192) on or about February 16, 1961; the person alleged to have been killed was Jadeen Stojakovich.

The defendants were doctors of chiropractic. Mrs. Stojakovich died shortly after she gave birth to a child. The defendants were present at the delivery. In a trial by jury, each defendant was found guilty of the crimes charged. [1] Each has appealed from the judgment and from the order denying his or her motion for a new trial. Since there is no appeal

UNITED STATES VETERAN

**Footnote:** Petitioner, the United States Veteran, argues that the defendants in this case, all three (3) of them, Walmart Department Store, McDonald's Restaurant, both at 7101 Gateway Blvd. West in El Paso, Texas, and Walmart Stores Incorporated at 702 S.W. 8th Street in Bentonville, Arkansas, individually as well as collectively, is and was at all times mentioned in this lawsuit, unconstitutional, inhumane, uncivilized, inappropriate, unfair, illogical, rediculous, aggressive, disgraceful, and illegal onto petitioner Hadi Abdul Hagg-United State Veteran, by their acts, policies, practices, procedures, standards, and training. All three (3) defendants forfeit the petitioner Hadi Abdul Hagg-United States Veteran chances for clearer vision, less severe headaches, lower medical expenses, cheaper eye-glasses, less Optic Research, less pain medication, ability to read and write more normal, the lower price merchandise, the security of marketing, the convenience of marketing, the assistance of marketing services, and the defendants, all three (3) of them, enhanced petitioner's chances to become blind.

They, Walmart Department Store, McDonald's Restaurant, and Walmart Stores Incorporated named in this lawsuit, has created more stress and strain onto the petitioner, and presented the United States Veteran with the agony of defeat. The bacteria in petitioner's eyes caused by the defendants, they bite wholes inside petitioner's eye lids and above his eye balls inside the eyes, to crawl into so that they can hid from active medication. Once the medication subside, the bacteria comes back out.

UNITED STATES VETERAN

from such an order, the appeals from each order must be dismissed.

## FIRST CAUSE OF ACTION

The defendants in this case, all three (3) of them, Walmart Department Store at 7/01 Gateway Blvd. West in El Paso, Texas, and McDonald's Restaurant at 7/01 Gateway Blvd, West in El Paso, Texas, and Walmart Stores Incorporated at 702 S.W. 8th Street in Bentonville, Arkansas, individually as well as collectively, is and was at all times mentioned in this lawsuit, unconstitutional, inhumane, uncivilized, inappropriate, unfair, illogical, rediculous, aggressive, disgraceful, and illegal onto petitioner Hadi Abdul Haqq - United States Veteran, by their acts, policies, practices, procedures, standards, and training. All three (3) defendants forfeited the petitioner Hadi Abdul Haqq - United States Veteran chances for clearer vision, less severe headaches, lower medical expenses, cheaper eye-glasses, less Optic Research, less pain medication, ability to read and write more normal, the lower price merchandise, the security of marketing, the convenience of marketing, the assistance of marketing services; and the defendants, all three (3) of them, enhanced petitioner's chances to become blind.

They, Walmart Department Store, McDonald's Restaurant, and Walmart Stores Incorporated named in this lawsuit, has created more stress and strain onto the petitioner, and presented the United States Veteran with the agony of defeat.

The bacteria in petitioner eyes caused by the defendants, they bite whales inside petitioner's eye lids and above his eye balls inside the eyes, to crawl into so that they can hide from active medication. Once the eye-medication subside, the bacteria comes back out the whales inside his eyes.

The defendants, all three (3) of them, Walmart Department Store, McDonald's Restaurant, and Walmart Stores Incorporated, they understood the veteran was homeless-outside, watching him come shopping with all of his belongings in a large Army-Bag on a cart, him being black and extremely dark complexion, reasoned that petitioner accompanied disabilities with a white beard at his older age. For these reasons in part, did not want petitioner inside neither Walmart store or McDonald's Restaurant on daily basis. Federal statutes prohibit discrimination on basis of sex, age, race, nationality, religion, or being handicapped; See e.g. Title VII of 1964 Civil Rights Act. See Report (Judiciary Committee) No. 873, Feb. 10, 1964 [To accompany S. 1732]; House Report (Judiciary Committee) No. 914, Nov. 20, 1963 [To accompany H.R. 7152] Cong. Record Volume 110 (1964).

## SECOND CAUSE OF ACTION

The defendants, all three (3) of them, Walmart Department Store, McDonald's Restaurant, and Walmart Stores Incorporated has and is violating petitioner rights as cited under the Fourteenth Amendment to the United States Constitution. We hold;

All persons born or naturalized in the United States and subject to
the jurisdiction thereof, are citizens of the United States and of the state
wherein they reside. No state shall make or enforce any law which shall
abridge the privileges or immunities of citizens of the United States;
nor shall any state deprive any person within it's jurisdiction the
equal protection of the laws.

### THIRD CAUSE OF ACTION.

After defendant Walmart Department store and Walmart stores Incor-
porated issued the veteran a Walmart Shopping Debit Card for a fee of five
dollars ($5.00) per month, they willfully, knowingly, and deliberty conspired to expel
petitioner from the property permanently, unlawfully, and wrongfully. And in
violation of petitioner rights as cited under the Fifth Amendment to the United
States Constitution. We hold;

No person shall be held to answer for a capital, or otherwise
infamous crime, unless on a presentment or indictment of a
Grand Jury, except in cases arising in the land or naval forces,
or in the Militia, when in actual service time of War or public
danger; nor shall any person be subject for the same offense
to be twice put in jeopardy of life or limb; nor shall be com-
pelled in any criminal case to be a witness against himself; nor
be deprived of life, liberty, or property, without due process
of law; nor shall private property be taken for public use,

without just compensation:


### FOURTH CAUSE OF ACTION


Petitioner was a customer at both places, Walmart Department Store as well as McDonald's Restaurant named in this lawsuit. A customer is one who regularly or repeatedly makes purchases of, or has buisness dealing with, a trademan or business; See AiKen Mills v. United States, D.C. v.C., 53 F.Supp. 524; ArKwright Corporation vs. United States, D.C. Mass., 53 F. Supp. 357, 361.


### FIFTH CAUSE OF ACTION


Employees in the Deli Unit of the Walmart Department Store named in this lawsuit, wearing the thin plastic gloves, opening doors with the gloves on, turning on and off cooking machines with the gloves on, weighing foods on the scale with the gloves on, resting their hands on the counter-top with their gloves on, wiping their irritated hands on their dirty apron with their gloves on, scratching an itch on their body with their gloves on, sneezing and coughing with their gloves on, touching their hair with their gloves on, adjusting their eye-glasses with their gloves on, fan away insects using their hands with their gloves on, than Keep picking-up the veteran's cooked fish and cooked chicken without using special utensils and without using the Hand-Papers,

with their gloves on.

## SIXTH CAUSE OF ACTION

Petitioner asked Deli Employees during the past three (3) years not to touch his food with their naked hands in gloves. Petitioner went to the Customer Service Center and requested representatives to not allow the Deli Employees to handle his foods with their naked hands in gloves; Petitioner remained in immediate fear of his health, safety, and welfare. The Eighth Amendment to the United States Constitution hold;

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.

## SEVENTH CAUSE OF ACTION

Petitioner made an Oral Administrative Appeal to Ms. Saundra, who is or was a Customer Service Manager for Walmart Store. Petitioner made at least three (3) Oral Administrative Appeals to Ms. Jacqualine, who is or was a Customer Service Manager at the Walmart Store. Petitioner made at least three (3) Oral Administrative Appeals to Mr. Edgar, who is or was an Assistant Store Manager at the Walmart Store. Petitioner made an Oral Administrative Appeal to Mr. Raynard, who is or was an Assistant Store Manager at the Walmart store. Petitioner made an Oral Administrative Appeal to Mr. Mike, who is or was a CO-

Manager at the Walmart Store. The veteran explained to each of these Walmart Store Managers that the employees working in the Deli Unit is handling his foods without using food utensils or Hand-Papers, and that once petitioner request that they do so, still, they give him the same peice of cooked meat that they had previously played over with their dirty gloves on. All to no avail.

## EIGHTH CAUSE OF ACTION

The administrative employees (managers) at the Walmart Store named in this lawsuit, as well as staff working in the Deli Department has committed "Negligence Pro Se". It is a form of negligence that results from violation of a statute. Conduct, whether of action or omission, which may be declared and treated as negligence without any argument of proof as to the particular circumstances, either because it is in violation of a specific statute or valid municipal ordinance, or because it is so palpably opposed to the dictates of common prudence that it can be said without hesitation or doubt that no careful person would have been guilty. As a general rule, the violation of a public duty, enjoined by law for the protection of person or property, so constitutes. See Seim v. Garavolia, Minn., 306 N.W. 2d 806, 810 (1981).

## NINTH CAUSE OF ACTION

The Walmart Store defendant is guilty of "Passive Negligence", It is

the failure to do something that should have been done. It is negligence which permits defects, obstacles, or pitfalls to exist on premises; that is, negligence which causes dangers arising from physical condition of land.

### TENTH CAUSE OF ACTION

Defendant Walmart Department Store is guilty of Subsequent Negligence. It exist where defendant sees plaintiff in a position of danger and fails to exercise due and proper caution to prevent injury to plaintiff. See Holman v. Brady, 241 Ala. 487, 3 So. 2d 30, 33.

### ELEVENTH CAUSE OF ACTION

Mr. Rodriguez is or was an employee at the Walmart Store Deli, serving petitioner cooked meats and other foods. March 31, 2019, Rodriguez snapped, by raising a bag containing cooked fish, over his head in a angry position with his arm cocked back, so as to throw it in petitioner's face for the purpose of causing injury to petitioner; But he did not release the weapon, being the bagged fish, merely the threat. Threat is a communicated intent to inflict physical or other harm on any person or property. It is a declaration of an intention to injure another or his property by some unlawful act. It is a declaration of one's purpose or intention to work injury to the person, property, or right of another, with

a view of restraining such person's freedom of action. See State v. Schweppe, Minn., 237 N.W. 2d 609, 615.

## TWELFTH CAUSE OF ACTION

Petitioner told Ms. Jacqueline, who is or was a Customer Service Manager that Rodriguez had threatened the petitioner, and petitioner told the Store Co-Manager Mr. Mike that Rodriguez had threatened to hit petitioner in the face with the bagged fish, and petitioner told Officer Holmes, a responding El Paso Police Officer, that Mr. Rodriguez threatened to hit petitioner in the face with the bagged fish. They expelled petitioner and officer Holmes omitted that portion of the incident from El Paso Police Incident Report Number OCA 19-09002.

## THIRTEENTH CAUSE OF ACTION

Ms. Jacqueline, Customer Service Manager said to petitioner prior to deciding police, " the next time incident happens with you, then you can not come back into the store, because I realize you have told me what they keep doing on a few occasions. Mr. Mike, the co-Manager said to petitioner prior to deciding police, " the next time incident happen with you, then you can not come back into the store". But Mr. Mike returned to petitioner with an Assistant Store Manager and a Security Agent saying to

petitioner that, "Rodriguez said he is thinking about calling police, and for that reason, now you can not come back into the store".


### FOURTEENTH CAUSE OF ACTION


Defendant Walmart Department Store is guilty of "Gross Negligence". It is the intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another. It is an act or omission respecting legal duty of an aggravated character distinguished from a mere failure to exercise ordinary care. It is a heedless and palpable violation of legal duty respecting the rights of others. Gross Negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances required of a person of ordinary prudence. Gross Negligence consist of conscious and voluntary act or omission which is likely to result in grave injury when in face of clear and present danger of alleged tortfeasor is aware. See Glaab v. Caudill, Fla. App., 236 So.2d 180, 182, 183, 185.


### FIFTEENTH CAUSE OF ACTION


The CO-Manager Mr. Mike, the female Assistant Store Manager, and the Security Agent said to petitioner, individually, "IF You Sign This Form The Security Agent is Holding, Then We Will Not Call The Police. The Form States

That You Agree Not To Go Back Into Any Walmart Stores In The United States."
This portion of the incident mirrored bribery and petitioner reported it to the
responding police officer, who was officer Holmes of El Paso Police Depart-
ment. Officer Holmes omitted this "bribery" portion of the incident from the
El Paso Police Incident Report Number 0CA19- 090092.

Bribery is the offering, giving, receiving, or soliciting of something of
value for the purpose of influencing the action of an official person in the
discharge of his or her public or legal rights and duties. See 18 U.S.C.S.
pre §§ 201(b), whoever directly or indirectly, corruptly gives, offers or
promises anything of value to any public official with intent to influence
that person's official act, is guilty of bribery. See Smith v. Pure Oil Co., 278
Ky. 430, 434 (Ky. 1939).

SIXTEENTH CAUSE OF ACTION

Petitioner states that at the time that three (3) executive employees
said "If You Sign This Form Then We Will Not Call Police", Mike the Co-Manager,
the female Assistant Store Manager, and the Security Agent, they obstructed
Justice, and in the process, violated petitioner rights as cited under the Ninth
Amendment to the United States Constitution. Obstruction of Justice is impeding
or obstructing those who seek justice, or those who have duties or powers
of administering justice therein. The act by which one or more person(s) attempt
to prevent, or do prevent, the execution of lawful process. See Toledo

Newspaper Co. vs. U.S. 247 U.S. 402, 38 S. Ct. 560, 564, 62 L. Ed. 1186. Also

See U.S.C.A. § 1501 et seq; Model Penal Code §§ 242.1 et seq.

The Ninth Amendment to the United Constitution holds that;

The enumeration in the Constitution, of certain rights, shall

not be construed to deny or disparage others retained by

the people.

## SEVENTEENTH CAUSE OF ACTION

The Walmart Department Store named in this lawsuit, using it's agents, em-

ployees, and subordinates, operated inside the unlawfully acts of "Conspiracy".

Conspiracy is a combination or confederacy between two or more persons

formed for the purpose of committing, by their joint efforts some unlawful or

criminal act, or some act which is lawful in itself, but becomes unlawful

when done by the concerted action of the conspirators, or for the purpose

of using criminal or unlawful means to the commission of an act not in it

self unlawful.

A person is guilty of Conspiracy with another person or persons to com-

mitt a crime if with the purpose of promoting or facilitating it's commission

he; (1) agrees with such other person or persons that they or one or more

of them will engage in conduct which constitutes such crime or an attempt

or solicitation to commit such crime; or (b) agrees to aid such other.

person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime. See Model Penal Code § 5.03.

A conspiracy may be a continuing one, actors may drop out, and others drop in, the details of operation may change from time to time, the members need not know each other or the part played by others, a member need not know all the details of the plan or the operation; he must, however, know the purpose of the conspiracy and agree to become a party to a plan to effectuate that purpose. See Craig vs. U.S.C.C.A. Cal., 81 F.2d 816, 822.

## EIGHTEENTH CAUSE OF ACTION

Defendant Walmart Department Store is and was during all time mentioned in this lawsuit conspired to commit Fraud. Fraud is an intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right. A False representation of a matter of fact, whether by words or by conduct, by false or misleading allegations, or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury. Anything calculated to deceive, whether by a single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or innuendo, by speech or silence, word of mouth, or look or gesture.

A generic term, embracing all multifarious means which human ingenuity can devise, and which are resorted to by one individual to get advantage over another by false suggestions or by suppression of truth, and includes all suprises, tricks, cunning, dissembling, and unfair way by which another is cheated. Elements of a cause of action for "fraud" include false representation of a present or past fact made by defendant, action in reliance thereupon by plaintiff, and damage resulting to plaintiff from such misrepresentation. See Johnson v. McDonald, 170 OKL. 1173 9 P. 2d 150.

## NINTEENTH CAUSE OF ACTION

Petitioner traveled from El Paso County courthouse to McDonald's Restaurant named in this lawsuit, thinking he was avoiding possible food contamination by unsanitary restaurant employees where he usually stay, El Paso Downtown Area. But after eating at the McDonald's for a period of about one (1) year, the veteran noticed that the employees serving the foods was unsanitary, and petitioner remained in immediate fear of his health, safety, and welfare at said McDonald's Restaurant.

Immediate can best be defined as "relating to or existing at the present time". Another term for immediate is "that which is produced directly by the act to which it is ascribed, without the intervention or agency of any distinct intermediate cause". When an immediate injury is caused by negligence, the injured party may elect to regard the negligence

as to immediate cause of action, and declare in case, or to consider the act itself as the immediate injury, and sue in trespass; See 14 John. 432; 6 Cowen, 342; 3 N.H. Rep. 465; sed vide 3 Conn. 64; 2 Bos. & Pull.

## TWENTIETH CAUSE OF ACTION

Petitioner explained to the Store Manager at McDonald's Restaurant named in this lawsuit that the females working the dinning-room floor as the janitors, is mopping the floor, emptying trash cans, cleaning tables, cleaning soda machines, cleaning the ice-machine, then grabbing petitioner's tray of food without washing their hands, and without gloves on. Petitioner explained to the Store Manager that he had made several Oral Appeals, but the employees continued unsanitary practices.

## TWENTY-FIRST CAUSE OF ACTION

August 21, 2017, petitioner completed his lunch meal at McDonald's named herein; He emptied his tray at the trash and started walking towards the exit when he noticed Assistant Manager Ivanne Silva walking in his direction. The veteran, and the Assistant Manager bumped shoulders to each others, and petitioner kept walking to the Bus Terminal, and the Assistant Manager kept walking to employee-only-section of the store.

The Store Manager, Ms. Castilla came running out of the store, through the parking-lot and up on the walkway of the bridge that joins the Eastside Bus Terminal with the Walmart-McDonald's Restaurant, shouting; "Sir, you can not come back into my store anymore". She called 911.

The Store Manager previously told petitioner on the same date of August 21, 2017 that, " I will get you a new tray of food if you agree to take your food-order outside of McDonald's into a McDonald's Eating Room next to the Walmart bathrooms". Petitioner said no, he do not agree.

After police officers heard both sides of the story, they Ordered petitioner not to return inside McDonald's Restaurant unless he had written authoriza-tion, but said petitioner was allowed continued free access to the Walmart store in it self.

## TWENTY-SECOND CAUSE OF ACTION

Petitioner asked both, the responding police officers to the McDonald's incident along with the store Manager, where do he go for administrative appeal. They both, police officers and the store Manager said, "McDonald's Restaurant, Castro Enterprises, 3332 Wedgwood Street, El Paso, Texas. Petitioner went there, to no avail. Petitioner filed written administrative appeal, to no avail.

## TWENTY-THIRD CAUSE OF ACTION

Petitioner states that two (2) of the defendants in this case, Walmart Department Store and McDonald's Restaurant frequently served his foods from their hands carrying bacteria, thereby contaminating his foods over a three (3) year period. That such bacteria enterred through the mouth and worked it's way into petitioner's eyes, causing petitioner permanent injury and permanent medical treatment, and petitioner fears for his immediate health, safety, and welfare.

## TWENTY-FOURTH CAUSE OF ACTION

Petitioner went to defendant Walmart Department Store in early March of 2019. The sales clerk Tricked petitioner by larceny, then defendant returned petitioner back his money. While at the check-out Register, the sales clerk quickly charged petitioner for his food-order. When petitioner looked over his sales receipt, he noticed that although he had only ordered one (1) single bread-roll, the sales-clerk had charged him for thirteen (13). Petitioner took his receipt along with the groceries to Ms. Audrey, who is or was Customer Service Representative at the Walmart Store. Ms. Audrey went to the sales clerk and asked if petitioner had ordered one (1) bread roll or thirteen (13) bread rolls. The sales clerk said only one (1), and the Customer Service Representative gave petitioner back the difference for the extra twelve (12) rolls, with the assistance of Ms. Jacqueline, who is or was a Customer Service Manager.

Robbery requires that the property be taken directly from the person of the victim or from their presence. This is different from larceny which simply requires that property be taken from the victim's possession, actual or constructive. Property is "on the victim's person" if the victim is actually holding the property, or the property is contained within clothing the victim is wearing or is attached to a victim's body such as a watch or earrings. Robbery charges by trick include that which took place because of a deception perpetrated by the person that illegally obtained possession of property. Robbery By Trick can occur even when the victim intends to turn over possession rights of said property. Trick is a crafty or underhanded device, maneuver, stratagem, or the like, intended to deceive or cheat.

Larceny by trick was created to punish the taking of property with the owner's consent when that consent was obtained by Fraud or Deceit. Before the courts created the offense of larceny by trick, defendants who had swindled their victims were able to argue that they had not committed larceny because the victims had willfully given them property.

Massachusettes is one state that has retained its larceny statutes. The general larceny statute in Massachusettes combines the crime of embezzlement with larceny. Under this statute anyone who

steals, or with intent to defraud obtains by a false pretense, or whoever unlawfully, and with intent to steal or embezzle, converts, or secretes with intent to convert, the property of another . . . whether such property is or is not

in his possession at the time of such conversion or secreting, shall be guilty of larceny... (Mass. Gen. Law Ann. ch 266 §§ 30(4):

(4) Whoever steals, or with intent to defraud obtains by a false pretense, or whoever unlawfully, and with intent to steal or embezzle, converts, secretes, unlawfully takes, carries away, conceal or copies with intent to convert any trade secret of another, regardless of value, whether such trade secret is or is not in his possession at the time of such conversion or secreting, shall be guilty of larceny, and shall be punished by imprisonment in the state prison for not more than five years, or by a fine of not more than twenty-five thousand dollars and imprisonment in jail for not more than two years.

## TWENTY-FIFTH CAUSE OF ACTION

Defendant McDonald's Restaurant named in this lawsuit has committed Bribery. At page 65 of this lawsuit, petitioner argues that the Store Manager told him;

"I will get you a new tray of food if you agree to take your food outside of McDonald's Restaurant into a McDonald's Eating Room next to Walmart bathroom's".

Bribery is the offering, giving, receiving, or soliciting of something of value for the purpose of influencing the action of an official person in the discharge of his or her public or legal rights and duties. See 18 U.S.C. pre § 201(b).

## TWENTY-SIXTH CAUSE OF ACTION

Defendant McDonald's Restaurant has willfully, knowingly and deliberatly violated petitioner's rights as cited under the Fourteenth (14th) Amendment to the United States Constitution. We hold,

All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of United States; nor shall any state deprive any person within it's juris- diction the equal protection of the laws.

## TWENTY-SEVENTH CAUSE OF ACTION

Defendant McDonald's Restaurant is and was at all times mentioned in this lawsuit, violated petitioner rights as cited under the Fifth (5th) Amend- ment to the United States Constitution. The constitution guarantee of equal protection of the laws means that no person or class of person shall be denied the same protection of the laws which is enjoyed by other persons

or other classes in like circumstances in their lives, liberty, property, and in their pursuit of happiness. See People vs. Jacob: 27 Cal. App. 3d 246, 103 Cal. Rptr. 536, 543; 14th Amend., U.S. Const. Doctrine simply means that similarly situated persons must receive similar treatment under the law. See Dorsey v. Solomon, D.C. Md.: 435 F. Supp. 725, 733.

## TWENTY-EIGHTH CAUSE OF ACTION

This court reviews pro se pleadings under a less stringent standard than those drafted by attorneys, and such pleadings are entitled to liberal construction that includes all reasonable inferences that can be drawn from them. See Haines. v. Kerner, 404 U.S. 519, 520-21 (1972) (explaining the lower standard for pro se pleadings). At the same time, however, parties proceeding pro se are still required to provide sufficient facts in support of their claim, See United States v. Pineda, 988 F. 2d 22, 23 (5th Cir. 1993).

## TWENTY-NINTH CAUSE OF ACTION

Defendant McDonald's Restaurant named in this lawsuit has committed the crime of "Fraud". Fraud is an intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right. A false representation of a matter of fact, whether by words or by conduct, by false or misleading allegations, or by concealment

of that which should have been disclosed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury. Anything calculated to deceive whether by a single act or combination, or by suppression or truth, or suggestion of what is false, whether it be by direct falsehood or innuendo, by speech or silence, word of mouth or look or gesture.

A generic term, embracing all multifarious means which human ingenuity can devise, and which are resorted to by one individual to get advantage over another by false suggestions or by suppression of truth, and includes all suprises, tricks, cunning, dissembling, and unfair way by which another is cheated. Elements of a cause of action for "fraud" include false representation of a present or past fact made by defendant, action in reliance thereupon by plaintiff, and damage resulting to plaintiff from such misrepresentation; see Johnson v. McDonald, 170 OKI. 117, 39 P. 2d 150.

## THIRTIETH CAUSE OF ACTION

Defendant McDonald's committed "Negligence Pro Se". It is a form of negligence that results from violation of a statute. Conduct, whether of action or omission, which may be declared and treated as negligence without any argument of proof as to the particular circumstances, either because it is in violation of a specific statute or valid municipal ordiance, or because it is so palpably opposed to the dictates of common prudence that it can be said without hesitation or doubt that no careful person would have been guilty. As a general

rule, the violation of a public duty, enjoined by law for the protection of person or property, so constitutes. See Sgim v. Garavalia, Minn., 306 N.W. 2d 306, 810 (1981).

### THIRTY-FIRST CAUSE OF ACTION

Defendant McDonald's Restaurant in this lawsuit is and was in violation of petitioner's rights as cited under the Eighth (8th) Amendment to the United States Constitution :

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."

### THIRTY SECOND CAUSE OF ACTION

Defendant McDonald's Restaurant has committed "Passive Negligence" in the above captioned matter before this court. It is negligence which permits defects, obstacles, or pitfalls to exist on premises; that is negligence which causes dangers arising from physical condition of land. Defendant Mc-Donald's Restaurant is guilty of "Subsequent Negligence" in this matter before the court.

Subsequent Negligence exist where defendant see plaintiff in a position of danger and fails to exercise due and proper precautions to prevent injury to plaintiff. See Holman v. Brady, 241 Ala. 487 3 So. 2d 30, 33.

## THIRTY-THIRD CAUSE OF ACTION

This lawsuit states that defendant McDonald's Restaurant named herein, used it's agents, employees, and subordinates, operated inside the unlawful acts of "conspiracy". Conspiracy is a combination or confederacy between two or more persons formed for the purpose of committing, by their joint efforts, some unlawful or criminal act, or some act which is lawful in itself, but becomes unlawful when done by the concerted action of the conspirators, or for the purpose of using criminal or unlawful means to the commission of an act not in itself unlawful.

A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating it's commission he; (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitute such crime or an attempt or solicitation to commit such crime, or (b) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime. See Model Penal Code § 5.03.

A conspiracy may be a continuing one, actors may drop out, and others drop in, the details of operation may change from time to time, the members need not know each other or the part played by others, a member need not know all all the details of the plan or the operation, he must, however, know the purpose of the conspiracy and agree to become a party to a plan to effectuate that purpose. See Craig v. U.S.C.A. Cal. 81 F.2d 816, 822.

## THIRTY-FOURTH CAUSE OF ACTION

Defendants, all three (3) of them, that is Walmart Department store, McDonald's Restaurant, and Walmart Stores Incorporated is guilty of Deformation of petitioner's character. Individually, the defendants charged the veteran with assault during the Walmart Incident on March 31, 2019, and charged the veteran with assault during the McDonald's Incident on August 21, 2017; And as a result, petitioner was expelled from both Walmart store and McDonald's store named in this lawsuit.

A plaintiff in a deformation of character situation must prove that the defendant(s) made false and defamatory statement about the plaintiff, made the statement in way that others saw, heard or read it, and that the plaintiff suffered harm as a result of the statement. See Model Penal Code § 2.06(2)(a). [cases: Criminal Law-Key 59(4).];

" A person who action on behalf of a principal is unlawful but does not merit prosecution because the agent had no Knowledge of the principle's illegal purpose; a person who lacks the mens rea for an offense but tricked or coerced by into committing a crime. Although the agent's conduct was unlawful, the agent might not be prosecuted if the agent had no Knowledge of the principal's illegal purpose. The principal is legally accountable for the innocent agent's action.

## THIRTY-FIFTH CAUSE OF ACTION

Defendant Walmart Stores Incorporated is the cheif operator of each Walmart Department Store in the United States, including the Walmart Department Store located 7101 Gateway Blvd. West, El Paso, Texas. The Walmart Company Headquarters is and was responsible for the overall corrections and customer services at each Department Store in the frame-work of the company. They was to see to it that their administrative Store Managers resolved each appeal, whether appeal be written or Oral, and kept all customers out of immediate fear of their health, safety, and welfare, including the petitioner. The Walmart Company was to assure each registered customer that he or she would not be threatened by staff members arising out of disagreement of service, or expelled from the Department Store by police, which was caused by managers and staff, including the petitioner.

## THIRTY-SIXTH CAUSE OF ACTION

Defendant Walmart Stores Incorporated made available bacteria used to contaminate petitioner's cooked foods at the Walmart Department Store named in this lawsuit, including at McDonald's Restaurant herein

## THIRTY-SEVENTH CAUSE OF ACTION

Defendants Walmart Department store, McDonald's Restaurant, and Walmart Stores Incorporated, all three defendants named herein, has corrupted the lawful process of petitioner as a customer.

"Corruption is an act done with intent to give some advantage inconsistent with official duties and rights of others. It is the act of an official or fiduciary person who unlawfully and wrongfully uses his station or character to procure some benefit for himself or for another person, contrary to the duty and right of others".

## THIRTY-EIGHTH CAUSE OF ACTION

Defendant Walmart Stores Incorporated named in this lawsuit, is and was at all times mentioned, violating petitioner's rights as cited under the Fifth (5th), Eighth (8th), Ninth (9th), and Fourteenth (14th) Amendments to the United States Constitution, and in the unlawful process, this defendant has committed the high crimes of fraud and conspiracy, and petitioner feared and still fears for his immediate health, safety, and welfare.

## THIRTY-NINTH CAUSE OF ACTION

Walmart Stores Incorporated as named in this lawsuit, using it's agents, employees, and subordinates, is and was during all times mentioned in this law-suit, organized a continuous operation of conspiracy. Conspiracy is a combination or confederacy between two or more persons formed for the purpose of committing, by their joint efforts, some unlawful or criminal act, or some act which is lawful in itself, but becomes unlawful when done by the con-certed action of the conspirators, or for the purpose of using criminal or un-lawful means to the commission of an act not in it self unlawful.

A person is guilty of conspiracy with another person or persons to com-mit a crime if with the purpose of promoting or facilitating it's commission he; (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitute such crime or an attempt or solicitation to committ such crime; or (b) agree to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime. See Model Penal Code, §§ 5.03.

A conspiracy may be a continuing one; actors may drop out, and others drop in; the details of operation may change from time to time; the members need not know each other or the part played by others; a member need not know all the details of the plan or operation; he must, however, know the purpose of the conspiracy and agree to become a party to a plan to

effectuate that purpose. See Craig v. U.S., C.C.A. Cal., 81 F. 2d 816, 822.


### FOURTIETH CAUSE OF ACTION


Petitioner remained in immediate fear of his health, safety, and welfare by defendant Walmart Stores Incorporated. "Immediate" can best be defined as "relating to or existing at the present time". Another term for immediate is "that which is produced directly by the act to which it is ascribed, without the intervention or agency of any distinct intermediate cause". When an immediate injury is caused by negligence, the injured party may elect to regard the negligence as the immediate cause of action, and declare in case, or to consider the act itself as the immediate injury, and sue in trespas; See 14 John. 432; 6 Cowers, 342; 3 N.H. Rep. 465; 2 Bos. & Pull.


### FOURTY-FIRST CAUSE OF ACTION


Walmart Stores Incorporated is and was in violation of petitioner rights as cited under the Fourteenth (14th) Amendment to the United States Constitution; We hold; All persons born or neturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person within

it's jurisdiction the equal protection of the laws.

Section 5 of the Fourteenth Amendment of the United States Constitution gives Congress the authority to enforce the Fourteenth Amendment through legislation. Congress used their authority during reconstruction to enact laws that sought to curtail vigilantism and misconduct by southern state and local government officials. These laws which provide both criminal and civil penalties, fell into disuse doing the 1880's, but were revived in the 1960's. The Supreme Court, in a series of rulings, gave individuals the right to sue local government officials (anywhere in the United States, not just in the south) for damages for violations of their civil rights.

The constitution guarantee of equal protection of the laws means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in like circumstances in their lives, liberty, property, and in their pursuit of happiness. See People v. Jacob. 27 Cal. App. 3d 246, 103 Cal. Rptr. 536, 543, 14th Amend. u.s. Const. Doctrine simply means that similar situated persons must receive similar treatment under the law. See Dorsey vs. Solomon, D.C. Md., 435 F. Supp. 725, 733.

## FOURTY-SECOND CAUSE OF ACTION

Defendant Walmart Stores Incorporated named in this lawsuit

has willfully, knowingly, and deliberty committed "fraud". Fraud is an intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right. A false representation of a matter of fact, whether by words or by conduct, by false, or misleading allegations, or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury. Anything calculated to deceive, whether by a single act or combination, or by suppression or truth, or suggestion of what is false, whether it be by direct falsehood or innuendo, by speech or silence, word of mouth or look or gesture.

A generic term, embracing all multifarious means which human ingenuity can devise, and which are resorted to be one individual to get advantage over another by false suggestions or by suppression of truth, and includes all suprises, tricks, cunning, dissembling, and unfair way by which another is cheated. Elements of a cause of action for "fraud" include false representation of a present or past fact made by defendant, action in reliance thereupon by plaintiff, and damage resulting to plaintiff from such misrepresentation; See Johnson v. McDonald, 170 OKl. 117, 39 P. 2d 150;

## FOURTY-THIRD CAUSE OF ACTION

Defendant Walmart Stores Incorporated is and was during all times

mentioned in this lawsuit committed "Negligence Pro Se". It is a form of negligence that results from violation of a statute. Conduct, whether of action or omission, which may be declared and treated as negligence without any argument of proof as to the particular circumstances, either because it is in violation of a specific statute or valid municipal ordiance, or because it is so palpably opposed to the dictates of common prudence that it can be said without hesitation or doubt that no careful person would have been guilty. As a general rule, the violation of a public duty, enjoined by law for the protection of person or property, so constitutes. Seim v. Garavalia, Minn., 306 N.W. 2d 806, 810 (1981).

## FOURTY-FOURTH CAUSE OF ACTION

Defendant Walmart Stores Incorporated maintains "aggressive" employment staff at Walmart Department Store as well as the McDonald's Restaurant located at the border of Mexico, in El Paso, Texas named in this lawsuit; Not based upon their mixed Indian Race, but rather, their lack of exposure regarding ordinary living. In the process of this aggressiveness, the defendant Walmart Stores Incorporated is and was during all times mentioned in this lawsuit, violated petitioner's rights as cited under the Eighth (8th) Amendment to the United States Constitution. We hold:

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted".

Defendant Walmart Stores Incorporated has treated petitioner cruel and unusual, and that petitioner still fears for his immediate health, safety, and welfare. As a result of that treatment, petitioner remains on medication for the contamination of his cooked foods sold to him under the Walmart Stores Incorporated. Miscarriage of Justice is warranting reversal; should be declared when the law, after examination of the entire case concluding the evidence of the opinion that it is reasonably possible that a result more favorable to appealing party would have been reached in absence of the error; See People vs. Bernhard, 222 C.A.2d 567, 35 Cal. Rptr. 401, 419.

## REQUEST FOR ORAL HEARING

Petitioner, Hadi Abdul Hagg, U.S. Veteran, do hereby request an Oral Hearing in the above entitled lawsuit. The right to hearing is that which resides in both the Sixth Amendment as well as the Fourteenth Amendment. A right to hearing entails that an individual maintain and be afforded the legal right to be heard in the venue of a court of law with adequate due process attached.

## JURY DEMAND

Petitioner, Hadi Abdul Hagg, U.S. Veteran, do hereby request a trial

P. 133
of
138

by jury, a panel of twelve (12) members. Trial by is a trial in which the issues of fact are to be determined by the verdict of a jury, not a judge, duly selected, impaneled, and sworn. The term "jury" and "trial by jury" were used at the adoption of the Constitution, and have their source in the English legal system.

A jury for the trial of a cause was a body of twelve men, described as upright, well-qualified, and lawful men, disinterested and impartial, not of kin or personal dependents of either of the parties, having their homes within the jurisdiction limits of the court, drawn and selected by officers free from all bias in favor of or against either party, duly impaneled under the direction of a competent court, sworn to render a true verdict according to law and the evidence given them, who, after hearing the parties and their evidence, and receiving the instructions of the court relative to the law involved in the trial, and deliberating, when necessary, apart from all extraneous influences, must return their unanimous verdict upon the issues submitted to them.

In federal court, and as well as many state courts, the parties may stipulate that the jury shall consist of less than twelve members or that a verdict of the jury. Petitioner in this lawsuit has requested twelve (12) members. See Federal Rule of Civil Procedure 48; Federal Rule Criminal Procedure 23.

The Seventh Amendment to the Federal Constitution provides that " In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved.

## MEDIATION

Petitioner, Hadi Abdul Haqq, U. S. Veteran, request Mediation in the above entitled lawsuit. Mediation is a structured, interactive form of ADR whereby a neutral third party, the mediator, helps two or more parties in dispute navigate negotiations. The goal of mediation is to help the parties find the most mutually beneficial solution to their dispute and allow them to create a written agreement to document the terms.

## REQUEST FOR SUMMARY JUDGMENT

Petitioner, Hadi Abdul Haqq, U. S. Veteran, request Summary Judgment in all of the amounts and awards as shown and specified under the Damages Clause of this lawsuit, pursuit Rule 56 - Federal Rules of Civil Procedure. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court need consider only the cited materials, but it may consider other materials in the record.

UNITED STATES VETERAN

If satisfied that an affidavit or declaration under this rule is submitted in bad faith or soley for delay, the court, after notice and a reasonable time to respond, may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subject to other appropriate sanctions.

## DAMAGES

Petitioner, Hadi Abdul Haqq, U.S. veteran, respectfully request judgment(s) against all three (3) defendants, Walmart Department Store, located 7101 Gateway Blvd. West, El Paso, Texas 79925, and McDonald's Restaurant, located 7101 Gateway Blvd. West, El Paso, Texas 79925, and Walmart Stores Incorporated, located 702 S.W. 8th Street, Bentonville, Arkansas 72716, jointly as well as individually as states as follows;

(1) Petitioner, Hadi Abdul Haqq, U.S. veteran request Judgment against defendant Walmart Department for Punitive Damages in the amount of Three Hundred Seventy Five Thousand Dollars ($375,000.00); and

(2) Petitioner, Hadi Abdul Haqq, U.S. veteran request Judgment against defendant

UNITED STATES VETERAN

Walmart Department Store for Compensatory Damages in the amount of Three Hundred Seventy Five Thousand Dollars ($375,000.00); and

(3) Petitioner, Hadi Abdul Haqq, U.S. Veteran, request Judgment against defendant Walmart Department Store for Mental Anguish Damages in the amount of Three Hundred Seventy Five Thousand Dollars ($375,000.00); and

(4) Petitioner, Hadi Abdul Haqq, U.S. Veteran request Judgment against defendant Walmart Department store for Deformation of character Damages in the amount of Three Hundred Seventy Five Thousand Dollars ($375,000.00); and

(5) Petitioner, Hadi Abdul Haqq, U.S. Veteran request Judgment against defendant McDonald's Restaurant for Punitive Damages in the amount of Three Hundred Seventy Five Thousand Dollars ($375,000.00); and

(6) Petitioner, Hadi Abdul Haqq, U.S. Veteran request Judgment against defendant McDonald's Restaurant for Compensatory Damages in the amount of Three Hundred Seventy Five Thousand Dollars ($375,000.00); and

(7) Petitioner, Hadi Abdul Haqq, U.S. Veteran request Judgment against defendant McDonald's Restaurant for Mental Anguish Damages in the amount of Three Hundred Seventy Five Thousand Dollars ($375,000.00); and

(8) Petitioner, Hadi Abdul Haqq, U.S. Veteran request Judgment against defendant McDonald's Restaurant for Deformation of character Damages in the amount of Three Hundred Seventy Five

UNITED STATES VETERAN

Thousand Dollars ($375,000.00), and

(9) Petitioner, Hadi Abdul Haqq, U.S. Veteran request Judgment against defendant Walmart Stores Incorporated for Punitive Damages in the amount of Three Hundred Seventy Five Thousand Dollars ($375,000.00), and

(10) Petitioner, Hadi Abdul Haqq, U.S. Veteran request Judgment against defendant Walmart Stores Incorporated for Compensatory Damages in the amount of Three Hundred Seventy Five Thousand Dollars ($375,000.00), and

(11) Petitioner, Hadi Abdul Haqq, U.S. Veteran request Judgment against defendant Walmart Stores Incorporated for Mental Anguish Damages in the amount of Three Hundred Seventy Five Thousand Dollars ($375,000.00), and

(12) Petitioner, Hadi Abdul Haqq, U.S. Veteran request Judgment against defendant Walmart Stores Incorporated for Deformation of Character Damages in the amount of Three Hundred Seventy Five Thousand Dollars ($375,000.00), and

In Addition, petitioner, Hadi Abdul Haqq, U.S. Veteran request a Medical Annuity from defendant Walmart Department Store, in the cash amount of One Thousand Dollars ($1,000.00) per month during the following Thirty (30) years, and such Medical Annuity shall increase each year with the rise of inflation;

(b) Petitioner, Hadi Abdul Haqq, U.S. Veteran request a Medical Annuity from defendant McDonald's Restaurant, in the cash amount of One Thousand Dollars ($1,000.00) per month during the following Thirty (30) years, and such Medical Annuity shall increase

UNITED STATES VETERAN

each year with the rise of inflation ;

(c) Petitioner, Hadi Abdul Haqq, U.S. Veteran  request   a Medical Annuity from de-
fendant Walmart Stores Incorporated, in the cash amount of One Thousand Dollars ($1,000.00)
per month during the following Thirty (30) years, and such Medical Annuity shall increase
each year with the rise of inflation ; and

Plus, petitioner, Hadi Abdul Haqq, U.S. Veteran  request   a Purchasing And Cash
Annuity from defendant Walmart Department Store, in the amount of One Thousand Dollars
($1,000.00) per month during the following Thirty (30) years, to be added to plaintiff's
Walmart Shopping Debit Card, and that such Award shall increase each year with the rise
of inflation ;

(b) Petitioner, Hadi Abdul Haqq, U.S. Veteran  request   a Purchasing And Cash Annuity
from defendant Walmart Stores Incorporated, in the amount of One Thousand Dollars ($1,000.00)
per month during the following Thirty (30) years, to be added to plaintiff's Walmart Shopping
Debit Card, and that such Award shall increase each year with the rise of inflation ; and

Furthermore, petitioner request ORDER, defendant Walmart Department Store have Expunged
El Paso Police Report Number OCA 19-09002, and authorize petitioner as a continuing
customer ;

(b) Petitioner request ORDER, defendant McDonald's Restaurant have Expunged El Paso Police
Report Number OCA 17-233113, and authorize plaintiff as a continuing customer ;

(c) Petitioner request ORDER, defendant Walmart Stores Incorporated have Expunged El Paso
Police Reports Number OCA 19-09002 and Number OCA 17-233113, and authorize plain-
tiff as a continuing customer inside and outside the Walmart Complex ;

UNITED STATES VETERAN

Finally, petitioner, Hadi Abdul Haqq, U.S. Veteran request that the United States Marshal Service uncover all illicit drug suppliers of Walmart Department store Employees;

(b) Petitioner request an ORDER, that the United States Marshal Service uncover all illicit drug suppliers of McDonald's Restaurant Employees; and

(c) Petitioner request an ORDER, which will compel the Sheriff with El Paso County, to execute an ORDER which will prevent El Paso Police from expelling petitioner from any other facility which is doing buisness with the general public.

WHEREFORE, petitioner, Hadi Abdul Haqq, U.S. Veteran, respectfully request this Court will enter Judgments and Awards in favor of petitioner, Hadi Abdul Haqq, U.S. Veteran, as stated and outlined in this lawsuit, and for such further releif as the interest of justice may acquire.

Respectfully Submitted,

July 22, 2019
Date

Hadi Abdul Haqq
United States Veteran
306 E. Paisano Dr.
PMB #215
El Paso, TX 79901

Hadi Abdul Haqq, US Veteran,
JOINT FORCE HEADQUARTERS
U.S. Army, U.S. Navy, And U.S. Air Force
DISTRICT OF COLUMBIA NATIONAL GUARD

DEPARTMENT OF DEFENSE
UNITED STATES OF AMERICA

## CERTIFICATE OF SERVICE

I, Hadi Abdul Hage, petitioner, United States Veteran, do hereby certify that I have mailed a true copy of this lawsuit along with all of the attachments, including administrative appeal for McDonald's Restaurant, El Paso Police Reports (2), veteran identification (color-copied) with social security card (color copied), altogether to the following six (6) individuals, and with a enclosed Proposed ORDER and MEMORANDUM;

(1) United States Marshal Service - Western District of Texas (First Class Mail)

655 E. Cesar Chavez Blvd.

Suite 235

San Antonio, Texas 78206

(2) El Paso County Sheriff (First Class Mail)

3850 Justice Road

El Paso, Texas 79938

(3) Ann C. McClure - Cheif Judge (First Class Mail)

El Paso County Courthouse

500 E. San Antonio Avenue

El Paso, Texas 79901

(4) General Manager (Certified Mail-Return Receipt Requested)

McDonald's Restaurant

7101 Gateway Blvd. West

El Paso, Texas 79925


(5) General Manager (Certified Mail-Return Receipt Request)

Walmart Department Store

7101 Gateway Blvd. West

El Paso, Texas 79925


(6) Walmart Stores Incorporated (Certified Mail-Return Receipt Requested)

702 S.W. 8th Street

Bentonville, Arkansas 72716


postage pre-paid, on this 22nd      day of    July    ,2019.


Hadi Abdul Haqq, US Veteran,
JOINT FORCE HEADQUARTERS
U.S. Army,U.S. Navy,And U.S. Air Force
DISTRICT OF COLUMBIA NATIONAL GUARD

Hadi Abdul Haqq
United States Veteran
306 E. Paisano Dr.
PMB #215
El Paso, TX 79901

August 28, 2017


To: Robert Castro - President                    To: Robert Castro - President

Castro Enterprises, Inc.                          Castro Enterprises, Inc.

330 Bartlett Dr.                                  745 Kapriz Avenue

El Paso, Texas 79912                              El Paso, Texas 79932


To: Robert Castro - President                    To: Robert Castro - President

Castro Enterprises                                Castro Enterprises, Inc.

12-253 Golden Sun Drive                           115 N. Euclid Avenue

El Paso, Texas 79938                              Ontario, CA.


Dear Mr. Castro,

August 21, 2017, as a regular customer, I entered one of your Mc-Donald's Restaurants located in Walmart Shopping Center at 7101 Gateway Blvd. West, El Paso, Texas. An employee working as a janitor, served me the meal without washing her hands or having on gloves. Previously, I had pleaded with managers and staff at this McDonald's location on several occassions, not to allow the person acting as the janitor who is mopping

floors, emptying trash cans, and cleaning machines such as soda and ice machines, not to deliver my food to the table. As they claim policy resently requires them to bring customers In-To-Eat, their food.

The person claiming to be Store Manager had faithfully promised me more than once that she would not allow this to happen. Staff at the cash Registered assured me this would not happen again. It happen for the seventh (7th) time on August 21, 2017, and I bumped into one of the under-managers, and the tray of food attempt to serve me by the janiter was Knocked of the floor.

The Store Manager replaced the tray of food that was Knocked to the floor, but called police regarding me bumped into the other staff member. When police arrived, store manager showed the videos in her cell-phone which she had re-corded from your survelience camara, and requested that I be permanently expelled. The police officer followed the Store Manager request, but said that I needed a letter in writing which would authorize me to return in the store without restrictions.

I have been in contact with an attorney concerning this matter, but thought you might would investigate and eliminate me being expelled, so that I can peaceably eat at McDonald's Restaurant, without the burden of extraordinary court cost and humiliation.

The same day of the incident, August 21, 2017, I went to a McDonald's Administrative Office located at 3332 Wedgewood Street in El Paso, Texas in search for an Administrative Supervisor. Mr. Joe Lopez said that Ms. Angie Silva was the person in charge over there; But to this end, she, Angie Silva has not been able to be reach.

At your earliest time possible, please send me a breif letter regarding this complaint, and allow me normal service at McDonald's Restaurant located in Walmart Shopping Center at 7101 Gateway Blvd. West in El Paso, Texas 79925.

Your Kindness in this matter is being embraced with gratitude profound.

Respectfully Yours,

CC: Robert Castro - President, Castro Enterprises

330 Bartlett Drive, El Paso, Tx 79912

HADI ABDUL HAQQ

(2) Robert Castro - President, Castro Enterprise

United States Veteran

12253 Golden Sun Drive, El Paso, Tx 79938

306 E. Paisano Drive

PMB # 215

(3) Robert Castro - President, Castro Enterprises

El Paso, Texas 79901

745 Kapriz Avenue

El Paso, Tx 79932

CC: p/f

Exibit





**INCIDENT / INVESTIGATION REPORT**

| | | |
|---|---|---|
| Agency Name | *El Paso Police Department* | |
| ORI | *TX0710200* | |

OCA  *19-090092*

Date / Time Reported  SU Mar 31, 2019   *12:49*

**INCIDENT DATA**

| | Crime Incident | Equiv Code: 57070019 | UCR: 90J | Local Statute: 30.05(D)(3)(A) | ☐ Att |
|---|---|---|---|---|---|
| #1 | *CRIM TRESPASS HABIT/SHLTR/SUPRFUND/INFSTRT* | | | | ☑ Com |
| #2 | Crime Incident | Equiv Code: | UCR: | Local Statute: | ☐ Att ☐ Com |
| #3 | Crime Incident | Equiv Code: | UCR: | Local Statute: | ☐ Att ☐ Com |

Last Known Secure  SU Mar 31, 2019   *12:30*
At Found  SU Mar 31, 2019   *12:35*

Location of Incident  *7101 Gateway West Blvd, El Paso, TX 79925*    Premise Type  *Grocery/Supermarket*   Offense Tract *PHRC*

**MO**

How Attacked or Committed

Weapon / Tools    Forcible Entry ☐ Yes ☐ No ☑ N/A

**VICTIM**

# Victims  *0*   Type    Injury    Residency Status

| V1 | Victim/Business Name (Last, First, Middle) | Victim of Crime # | Age / DOB | Race | Sex |
|---|---|---|---|---|---|
| | | Relationship to Offenders | | | |

Home Address    Home Phone

Employer Name/Address    Business Phone

| VYR | Make | Model | Style | Color | Lic/Lis | VIN |
|---|---|---|---|---|---|---|

**OTHERS INVOLVED**

CODES:  V- Victim (Denote V2, V3)  O = Owner (if other than victim)  R = Reporting Person (if other than victim)  I = Other Involved

| Code | Name (Last, First, Middle) | Victim of Crime # | Age / DOB | Race | Sex |
|---|---|---|---|---|---|
| RP1 | *Gonzalez, Michael* | | *37* | *W* | *M* |

Home Address  *14668 Alton Oaks Ave, El Paso, TX 79938*    Home Phone *(915) 252-4770*

Employer Name/Address  *Wal Mart / 1551 N ZARAGOZA*    Business Phone

| Code | Name (Last, First, Middle) | Victim of Crime # | Age / DOB | Race | Sex |
|---|---|---|---|---|---|
| IO1 | *Flores Lopez, Enrique* | | *58* | *W* | *M* |

Home Address  *304 First, Sunland Park, NM 88063*    Home Phone *(915) 779-6664*

Employer Name/Address  *Wal Mart / 7101 GATEWAY WEST*    Business Phone *(915) 779-6664*

**PROPERTY**

Status Codes    L = Lost   S = Stolen   R = Recovered   D = Damaged   Z = Seized   B = Burned   C = Counterfeit / Forged   F = Found   U = Unknown
(Check "OJ" column if recovered for other jurisdiction)

| Victim # | UCR | Status - Date | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

PUBLIC RECORDS INFORMATION
ALL CASE ELEMENTS SUBJECT TO NONDISCLOSURE
HAVE BEEN REMOVED IN ACCORDANCE WITH THE
TEXAS PUBLIC INFORMATION ACT (TX GOVT. CODE CH. 552)

DATE: *4/4/19* BY: *C1365* TO: *HARP*

Number of Vehicles Stolen  *0*    Number Vehicles Recovered  *0*

**ID**

| Officer | Officer Signature | Supervisor Signature |
|---|---|---|
| *(03198) HOLMES, ANTHONY* | | *(01640) NAVARRETE, JOSE* |

Complainant Signature    Case Status: *Further Investigation* *March 31, 2019*    Case Disposition:

Printed at: 4/4/2019  10:02 by user: C1365    Page: 1

# Incident / Investigation Report

El Paso Police Department

OCA: 19-090092

| Status Codes | L = Lost   S = Stolen   R = Recovered   D = Damaged   Z = Seized   B = Burned   C = Counterfeit / Forged   F = Found   U = Unknown |
|---|---|

**D R U G S**

| Status | Quantity | Type Measure | Suspected Drug Type |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**OFFNDR**

| Offender(s) Suspected of Using | Offender 1   OF1 | Offender 2 | Offender 3 | Primary Offender Resident Status |
|---|---|---|---|---|
| ☐ Drugs   N/A | Age:   Race:   Sex: | Age:   Race:   Sex: | Age:   Race:   Sex: | ☐ Resident |
| ☐ Alcohol | Ssn: | Ssn: | Ssn: | ☐ Non-Resident |
| ☐ Computer | Offender 4 | Offender 5 | Offender 6 | ☐ Unknown |
| | Age:   Race:   Sex: | Age:   Race:   Sex: | Age:   Race:   Sex: | |
| | Ssn: | Ssn: | Ssn: | |

**SUSPECT**

| Name (L, F M) | | Home Address | | Home Phone |
|---|---|---|---|---|
| OF1 | | | | |
| SSN: | Occupation | Business Address | | Business Phone |
| DOB.   /   Age | Race | Sex | Hgt | Wgt | Build | Hair Color | Eye Color |
| | | | | | Hair Style | Hair Length | Glasses |

Scars, Marks, Tatoos, or other distinguishing features (i.e. limp, foreign accent, voice characteristics)

| Hat | Shirt/Blouse | Coat/Suit | Socks |
|---|---|---|---|
| Jacket | Tie/Scarf | Pants Dress/Skirt | Shoes |

| Was Suspect Armed? | Type of Weapon | Direction of Travel | Mode of Travel |
|---|---|---|---|

| VYR | Make | Model | Style/Doors | Color | Lic/Lis | Vin |
|---|---|---|---|---|---|---|

Suspect Hate / Bias Motivated:   ☐ Yes   Type:

**WITNESS**

| Name (Last, First, Middle) | SSN: | D.O.B. | Age | Race | Sex |
|---|---|---|---|---|---|
| Home Address | Home Phone | Employer | | | Phone |

**NARRATIVE**

On 3/31/2019 Officer A. Holmes #3198 working as patrol unit 1S178 was dispatched to 7401 Gateway West (Wal-Mart) in reference to an assault in progress. Upon arrival the officer met with RP-1 (manager) who advised of the current incident. RP-1 requested that OF-1 be criminally trespassed from the location. RP-1 then provided OF-1 with a trespass warning which was witnessed by the officer. OF-1 was then escorted off the premises. RP-1 was provided with an incident information card and advised accordingly.

PUBLIC RECORDS INFORMATION
ALL CASE ELEMENTS SUBJECT TO NONDISCLOSURE
HAVE BEEN REMOVED IN ACCORDANCE WITH THE
TEXAS PUBLIC INFORMATION ACT (TX GOVT. CODE CH. 552)

DATE:_____   BY:_____   TO: ____

**INCIDENT / INVESTIGATION REPORT**

| INCIDENT DATA | |
|---|---|

**Agency Name**
*El Paso Police Department*

**ORI**
*TX0710200*

**OCA** *17-233113*

**Date / Time Reported**
*MO Aug 21, 2017      11:27*

**#1 Crime Incident** *CRIMINAL TRESPASS*   **Equiv Code:** 57070010   **UCR:** 90J   **Local Statute:** 30.05(a) PC   ☐ Att  ☑ Com
**Last Known Secure** *MO Aug 21, 2017      11:20*

**#2 Crime Incident**   **Equiv Code:**   **UCR:**   **Local Statute:**   ☐ Att  ☐ Com
**At Found** *MO Aug 21, 2017      11:27*

**#3 Crime Incident**   **Equiv Code:**   **UCR:**   **Local Statute:**   ☐ Att  ☐ Com

**Location of Incident** *7101 Gateway West Blvd, El Paso, TX 79925*   **Premise Type** *Grocery/Supermarket*   **Offense Tract** *PHRC*

**MO**
**How Attacked or Committed**

**Weapon / Tools**
**Forcible Entry** ☐ Yes  ☐ No  ☑ N/A

**# Victims** *1*   **Type** *Individual*   **Injury** *None*   **Residency Status** *Unknown*

### VICTIM

**V1**   **Victim/Business Name (Last, First, Middle)**
*Silva, Ivonne Guadalupe*
**Victim of Crime #** *1*
**Relationship to Offenders**
**Age / DOB** *30*   **Race** *W*   **Sex** *F*

**Home Address**
*14204 Lasso Rock Dr, El Paso, TX 79938*
**Home Phone** *(915) 219-3367*

**Employer Name/Address**
*Mc Donalds / 7101 GATEWAY WEST*
**Business Phone**

**VYR**   **Make**   **Model**   **Style**   **Color**   **Lic/Lis**   **VIN**

### OTHERS INVOLVED

**CODES:** V- Victim (Denote V2, V3)   O = Owner (if other than victim)   R = Reporting Person (if other than victim)   I = Other Involved

**Code** **RP1**   **Name (Last, First, Middle)** *Castillo, Teresa*
**Victim of Crime #**
**Age / DOB** *35*   **Race** *W*   **Sex** *F*

**Home Address**
*5500 Salem Dr, El Paso, TX 79924*
**Home Phone**

**Employer Name/Address**
*Mc Donald's / 7101 GATEWAY WEST*
**Business Phone**

**Code**   **Name (Last, First, Middle)**
**Victim of Crime #**
**Age / DOB**   **Race**   **Sex**

**Home Address**
**Home Phone**

**Employer Name/Address**
**Business Phone**

### PROPERTY

**Status Codes**   L= Lost   S = Stolen   R = Recovered   D = Damaged   Z = Seized   B = Burned   C = Counterfeit / Forged   F = Found   U = Unknown
(Check "OJ" column if recovered for other jurisdiction)

| Victim # | UCR | Status - Date | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

PUBLIC RECORDS INFORMATION
ALL CASE ELEMENTS SUBJECT TO NONDISCLOSURE
HAVE BEEN REMOVED IN ACCORDANCE WITH THE
TEXAS PUBLIC INFORMATION ACT (TX GOVT. CODE CH. 552)
DATE: 4/4/19   BY: CBRS   TO: HROO

**Number of Vehicles Stolen** *0*   **Number Vehicles Recovered** *0*

**ID**   **Officer** *(03132) DOMINGUEZ, SERGIO*   **Officer Signature**   **Supervisor Signature** *(01405) QUINTANILLA, ENRIQUE A*

**Complainant Signature**   **Case Status:** *Further Investigation   August 21, 2017*   **Case Disposition:**

Printed at: 4/4/2019  10:08 by user: C1365

Page: 1

## Incident / Investigation Report

El Paso Police Department

OCA: 17-233113

**Status Codes**  L = Lost  S = Stolen  R = Recovered  D = Damaged  Z = Seized  B = Burned  C = Counterfeit / Forged  F = Found  U = Unknown

### DRUGS

| Status | Quantity | Type Measure | Suspected Drug Type |
|---|---|---|---|
| | | | |

### OFFENDER

| Offender(s) Suspected of Using | Offender 1  OF1 | Offender 2 | Offender 3 | Primary Offender Resident Status |
|---|---|---|---|---|
| ☐ Drugs ▮▮▮ A | Age: ▮ Race: ▮ Sex: ▮ | Age: Race: Sex: | Age: Race: Sex: | ▮ Resident |
| ☐ Alcohol | Ssn: | Ssn: | Ssn: | ☐ Non-Resident |
| ☐ Computer | | | | ☐ Unknown |
| | Offender 4 | Offender 5 | Offender 6 | |
| | Age: Race: Sex: | Age: Race: Sex: | Age: Race: Sex: | |
| | Ssn: | Ssn: | Ssn: | |

### SUSPECT

| Name (L, F M)  OF1 ▮▮▮ | | Home Address ▮▮▮ | Home Phone |
|---|---|---|---|
| SSN: | Occupation | Business Address ▮▮▮ | Business Phone |

| DOB. / Age | Race | Sex | Hgt | Wgt | Build | Hair Color ▮▮▮ | Eye Color ▮▮▮ |
|---|---|---|---|---|---|---|---|
| | | | | | Hair Style | Hair Length | Glasses |

Scars, Marks, Tatoos, or other distinguishing features (i.e. limp, foreign accent, voice characteristics)

| Hat | Shirt/Blouse | Coat/Suit | Socks |
|---|---|---|---|
| Jacket | Tie/Scarf | Pants/Dress/Skirt | Shoes |

| Was Suspect Armed? | Type of Weapon | Direction of Travel | Mode of Travel |
|---|---|---|---|

| VYR | Make | Model | Style/Doors | Color | Lic/Lis |
|---|---|---|---|---|---|

Suspect Hate / Bias Motivated:  ☐ Yes  ☑ No   Type:

PUBLIC RECORDS INFORMATION
ALL CASE ELEMENTS SUBJECT TO NONDISCLOSURE
HAVE BEEN REMOVED IN ACCORDANCE WITH THE
TEXAS PUBLIC INFORMATION ACT (TX GOVT. CODE CH. 552)

### WITNESS

| Name (Last, First, Middle) | SSN: | D.O.B. DATE: | Age BY: | Race | Sex TO: |
|---|---|---|---|---|---|
| Home Address | Home Phone | Employer | | | Phone |

### NARRATIVE

Officers J.P. Valles #2165 and S. Dominguez #3132 working as 1F194, were dispatched to 7101 Gateway west (McDonalds inside Walmart) reference to an assault in progress type of call. Upon arrival the officers met with the reporter (store manager), who advised the officers that one of her employees had just been assaulted by the offender. The reporter stated that the victim was passing by and holding a tray, when the offender was walking towards the victim. The reporter stated that the offender struck the victim on her shoulder with the offender's shoulder, making her drop the tray she was holding. The victim advised the officers that she did not feel pain and prosecution was not desired against the offender. The reporter advised the officers that it has been an ongoing issue, the offender enters the business and becomes verbally aggressive towards the staff. The reporter advised the officers that the offender is no longer welcome inside the business. The officers requested the reporter to approach the scene and criminally trespass the offender, which she did in the presence of the officers. The offender advised the officers that he understood. The officers advised the offender of the consequences of returning to the address of occurrence and checked the offender for warrants at which time the offender checked clear. The offender was advised and sent on his way. The reporter was issued and incident information card and advised accordingly.